# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **SPECIALTY PACKAGING HOLDINGS, INC.,** *et al.*,[1] | ) ) ) | **Case No. 10-10142 (\_\_\_\_)** |
| | ) | |
| Debtors. | ) ) | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY (A) PREPETITION EMPLOYEE AND INDEPENDENT CONTRACTOR WAGES, SALARIES AND RELATED ITEMS; (B) PREPETITION EMPLOYEE AND INDEPENDENT CONTRACTOR BUSINESS EXPENSES; (C) PREPETITION CONTRIBUTIONS TO AND BENEFITS UNDER EMPLOYEE BENEFIT PLANS; (D) PREPETITION EMPLOYEE PAYROLL DEDUCTIONS AND WITHHOLDINGS; (E) ADDITIONAL OUTSOURCE WORKFORCE COSTS; (F) WORKERS' COMPENSATION PREMIUMS; AND (G) ALL COSTS AND EXPENSES INCIDENT TO THE FOREGOING PAYMENTS AND CONTRIBUTIONS; AND (II) AUTHORIZING AND DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO PAY ALL CHECKS AND ELECTRONIC PAYMENT REQUESTS MADE BY THE DEBTORS RELATING TO THE FOREGOING**

("WAGE MOTION")

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby move this Court (the "**Motion**") pursuant to sections 105(a), 363(b), 507(a)(4), 507(a)(5) and 541(d), for entry of an order (the "**Order**") (i) authorizing, but not directing, the Debtors to pay: (a) prepetition employee and independent contractor wages, salaries and related items; (b) prepetition employee and independent contractor business expenses; (c) prepetition contributions to and benefit under employee benefit plans; (d) prepetition employee payroll deductions and withholdings; (e) additional outsource workforce costs; (f) workers' compensation premiums;

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Specialty Packaging Holdings, Inc. (7942), The Specialty Packaging Group, Inc. (6668), Cosmetics Specialties, Inc. (0826), Cosmolab, Inc. (1367), Cosmetics Specialties East, LLC (0313), and Cosmolab New York, Inc. (2222). The primary mailing address for the Debtors is: 1100 Garrett Parkway, Lewisburg, TN 37091

and (g) all costs and expenses incident to the foregoing payments and contributions; and (ii) authorizing and directing banks and financial institutions to pay all checks and electronic payment requests made by the Debtors relating to the foregoing. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 507(a)(4), 507(a)(5) and 541(d) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "**Bankruptcy Code**").

## BACKGROUND

4. On the date hereof (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or statutory creditors' committee has been appointed in these Chapter 11 cases.

5. The Debtors, collectively, are an industry-leading global developer and manufacturer of color cosmetics. The Debtors' primary manufacturing facility is located in Lewisburg, Tennessee. For a more detailed description of the Debtors' business operations and the events leading up to the chapter 11 filing, see the *Declaration of Michael J. Musso in Support of the Chapter 11 Petitions and First Day Motions and Applications* (the "**Musso Declaration**").

2

**RELIEF REQUESTED**

6. By this Motion, the Debtors seek the entry of an order, pursuant to sections 105(a), 363(b), 507(a)(4), 507(a)(5) and 541(d) of the Bankruptcy Code, (a) authorizing the Debtors, in accordance with their stated policies (as such polices may be modified from time to time) and in the Debtors' sole discretion, to pay: (i) certain prepetition wages, salaries, overtime pay, incentive pay, contractual compensation, vacation pay, holiday pay and other accrued compensation (collectively, the "**Prepetition Compensation**") to Employees and Independent Contractors (as such terms are defined below); (ii) prepetition business expenses, including travel, lodging, moving and other relocation expenses and other reimbursable business expenses (collectively, the "**Prepetition Business Expenses**") to Employees and Independent Contractors; (iii) prepetition contributions to, and benefits under, the Employees' benefit plans; (iv) prepetition payroll deductions and withholdings with respect to Employees; (v) certain prepetition Outsource Workforce Costs (as such term is defined below); (vi) Workers' Compensation Premiums (as such term is defined below); and (vii) all costs and expenses incident to the foregoing payments and contributions (including payroll-related taxes and processing costs); and (b) authorizing and directing banks and financial institutions to pay all checks and electronic payment requests made by the Debtors relating to the foregoing.

**DESCRIPTION OF WORKFORCE AND
RELATED OBLIGATIONS AND BENEFITS**

**Employees**

7. The Debtors' workforce currently includes approximately 243 full-time hourly and salaried employees located in Tennessee and New York (the "**Employees**").

8. The Debtors' hourly Employees are paid on a weekly basis, every Friday for the week ended the previous Saturday. The Debtors' salaried Employees are paid current, on a semi-

3

monthly basis, on the 15th and the last day of every month. The Employees perform a variety of critical functions for the Debtors' businesses and their skills and specialized knowledge and understanding of the Debtors' infrastructure and operations, as well as their relationships with customers, vendors and other third parties, are essential to the success of the Debtors' continuing operations and their ability to maximize the value of their assets.

**Independent Contractors**

9. In addition to their Employees, the Debtors currently engage two independent contractors to perform essential employee functions on a cost-effective basis (collectively, the "**Independent Contractors**"). The Independent Contractors provide critical services to the Debtors in connection with the day-to-day operation of the Debtors' business relating to sales management, customer relations, and forecasting and scheduling. The Independent Contractors have acquired substantial knowledge regarding the Debtors' infrastructure, business systems and particularized needs. The Debtors believe that the Independent Contractors will cease providing services to the Debtors, to the direct detriment of the Debtors' businesses, if they are not paid amounts owing to them as of the Petition Date. The replacement of any of the Independent Contractors at this juncture would be difficult and would likely require a retraining period and result in increased cost to the Debtors. As a result, the payment of amounts owing to the Independent Contractors is essential to the success of the Debtors' continuing operations and their ability to maximize the value of their assets. The Debtors estimate that the total amounts owing to the Independent Contractors as of the Petition Date is $7,228.00.

**Outsource Workforce**

10. In addition to the Employees and the Independent Contractors, the Debtors also rely on other individuals to provide essential employee services (collectively, the "**Outsource**

4

DEL1 73652-2

**Workforce**"). The Outsource Workforce is comprised of employees of Ledford Employee Exchange and other various agencies from time to time as demand requires (collectively, the "**Outsource Agencies**"). The number of individuals that make up the Outsource Workforce varies from time to time contingent upon demand, but typically ranges from one employee to eighty employees. At the present time, the Outsource Workforce consists of approximately 45 employees.

11. The Debtors believe that if they are not permitted to pay the Outsource Agencies on account of the Outsource Workforce (the "**Outsource Workforce Costs**"), the Outsource Agencies may withdraw the Outsource Workforce and refuse to provide the Debtors with replacement employees, to the direct detriment of the Debtors' businesses. Although the Debtors potentially could replace the Outsource Workforce, the Debtors believe that: (a) the abrupt departure of the Outsource Workforce necessarily would cause disruptions in the Debtors' operations and could severely impact the Debtors' relationships with their customers at a time when the importance of maintaining such relationships is paramount; and (b) the costs associated with identifying and training replacement employees, including the costs associated with the disruption to the Debtors' businesses caused by the loss of the Outsource Workforce, would exceed any amounts owing to the Outsource Agencies. The Debtors estimate that the total amounts owing as Outsource Workforce Costs as of the Petition Date is $6,190.08.[2]

**Prepetition Compensation, Business Expenses, Outsource Workforce Costs and Related Claims**

12. As described above, the continued and uninterrupted support of the Employees, the Independent Contractors and the Outsource Workforce is essential to the Debtors' ongoing

---

[2] The Debtors will confirm with the Outsource Agencies that no individual employee will be paid in excess of the $10,950 limit under Section 507(a)(4) of the Bankruptcy Code.

5

operations and their ability to maximize the value of their assets. As of the Petition Date, many Employees and Independent Contractors were owed or had accrued various sums for Prepetition Compensation and Prepetition Business Expenses. In addition, as of the Petition Date, the Debtors had obligations in respect of Prepetition Compensation for deductions from Employees' paychecks used to make payments on behalf of the Employees for or with respect to, among other things: (a) child support payments, garnishments, 401(k) savings plans, health benefit premium payments, voluntary life insurance programs, and other similar programs on account of which the Debtors deduct a sum of money from an Employee's paycheck and pay that amount to a third party (collectively, the "**Deductions**"); and (b) withholdings from Employees' paychecks on account of various federal, state and local income, FICA, Medicare and other taxes for remittance to the appropriate federal, state, or local taxing authority (collectively, the "**Withholdings**"). In addition, as of the Petition Date, the Debtors had obligations to the Outsource Workforce Agencies with respect to the Outsource Workforce. Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings and Outsource Workforce Costs were due and owing as of the Petition Date because, among other things:

(a) the Debtors filed their chapter 11 petitions in the midst of certain of their regular and customary payroll periods, as well as in the midst of their regular reimbursement cycle for Employee and Independent Contractor and Outsource Workforce business expenses;

(b) certain checks issued to the Employees and Independent Contractor and Outsource Workforce Agencies prior to the Petition Date (including expense reimbursement checks) have not yet been presented for payment or have not yet cleared the banking system and, accordingly, were not honored and paid as of the Petition Date;

(c) certain Employees and Independent Contractor and Outsource Workforce Agencies have not yet been paid portions of their salaries, contractual compensation and wages for services previously rendered to the Debtors and/or have not yet been reimbursed for business expenses previously advanced on behalf of the Debtors; and

6

DEL1 73652-2

(d) certain other forms of compensation (including vacation pay) related to prepetition services have not yet been paid to, or for the benefit of, the Employees because such amounts, although accrued in whole or in part prior to the Petition Date, were not payable at such time, but rather will become payable in the future in the ordinary course of the Debtors' businesses.

13. The Debtors seek authority to pay all Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings and Outsource Workforce Costs attributable to the period prior to the Petition Date. The Debtors estimate of the amounts and principal categories of the Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings and Outsource Workforce Costs are attached hereto as **Exhibit A** and incorporated herein by reference.

**Prepetition Employee Benefits**

14. The Debtors maintain a number of employee benefit programs, including but not limited to: health, dental, vision, prescription drug, life and disability insurance, 401(k) savings plans, vacation plans, and other similar programs (collectively, and as described in more detail below, the "**Benefit Programs**"). These Benefit Programs are fully insured, with the exception of the short-term disability plan, which is self-funded by the Debtors. A nonexclusive schedule of Benefit Programs under which prepetition Benefits are owed is attached hereto as **Exhibit B** and incorporated herein by reference. The contributions to or benefits paid under the various Benefit Programs are referred to herein collectively as the "**Benefits**."[3]

15. As of the Petition Date, certain Benefits were either: (i) presently due and owing under the Debtors' self-funded short-term disability program;[4] or (ii) owed but unpaid because

---

[3] In addition, the Debtors provide the Employees with statutorily-mandated benefits such as jury duty leave and bereavement leave.

[4] Short-term disability benefits are provided at no cost to employees. For salaried exempt employees, the Debtors pay up to six weeks at 100% of an employee's base salary. Further, the Debtors pay up to an additional twenty weeks (paid at 60% of weekly pay up to max. of $2,000 weekly) per calendar year if additional time is needed away from work to recover from an illness or injury. For hourly and salaried non-exempt employees, the Debtors pay

7

DEL1 73652-2

certain obligations under the Benefit Programs accrued either in whole or in part prior to the Petition Date, but will not become payable in the ordinary course of the Debtors' businesses until a later date. The Debtors estimate that the amount owing under the Debtors' self-funded short-term disability program was approximately $7,100.00 as of the Petition Date. The Debtors seek authority to pay amounts owing under the Benefit Programs as of the Petition Date.

**Processing Costs and Employer Payroll Taxes**

16. The Debtors use ADP for payroll processing and related services. The Debtors incur costs incident to Prepetition Compensation and Deductions, such as processing costs, payroll administration costs and the employer portion of payroll-related taxes, as well as accrued but unpaid prepetition charges for administration of the Benefit Programs (collectively, the "**Prepetition Processing Costs**"). The Debtors estimate that the aggregate amount of Prepetition Processing Costs accrued but unpaid, as of the Petition Date, was approximately $11,183.40. Payment of the Prepetition Processing Costs is justified because the failure to pay any such amounts might disrupt services of third-party providers with respect to Prepetition Compensation, Deductions and Benefits. By paying the Prepetition Processing Costs, the Debtors may avoid even temporary disruptions of such services and thereby ensure that the Employees obtain all compensation and benefits without interruption.

**Workers' Compensation Plans**

17. In Tennessee, the Debtors maintain the mandated level of workers' compensation insurance through Berkley Regional Insurance Company ("**Berkley**"). The Debtors are billed monthly by Berkley for the workers' compensation premiums. On average, the Debtors pay

---

50% of weekly pay up to a maximum of $200 weekly for up to twenty-six weeks per calendar year if time is needed away from work to recover from an illness or injury.

approximately $19,300.00 monthly in arrears for workers' compensation premiums in Tennessee (the "**Tennessee Workers' Compensation Premium**").

18. In New York, the Debtors maintain the mandated level of workers' compensation insurance through The Phoenix Insurance Company ("**Phoenix Insurance**"). The Debtors are billed annually by Phoenix Insurance for the workers' compensation premiums. On average, the Debtors pay approximately $3,024.00 annually for workers' compensation premiums in New York (the "**New York Workers' Compensation Premium**") and together with the Tennessee Workers' Compensation Premium, the "**Workers' Compensation Premiums**"). The Debtors seek authority to pay all Workers' Compensation Premiums presently due and owing and future Workers' Compensation Premiums as they come due in the ordinary course of business.

## BASIS FOR RELIEF REQUESTED

19. The payment of the Prepetition Compensation, Prepetition Business Expenses, Outsource Workforce Costs, Deductions, Withholdings, Benefits, Prepetition Processing Costs and Workers' Compensation Premiums is warranted under sections 105(a), 363(b), 507(a)(4), 507(a)(5) and 541(d) of the Bankruptcy Code and case law in this District and elsewhere.

## Amounts Owed to Employees and Independent Contractors Enjoy Priority Status Under the Bankruptcy Code

20. Under section 507(a)(4) of the Bankruptcy Code, employees are granted a priority claim for:

> allowed unsecured claims, but only to the extent of $10,950 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for —
>
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for

9

the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor . . . .

11 U.S.C. § 507(a)(4). Likewise, under section 507(a)(5) of the Bankruptcy Code, employees are granted a priority claim for:

allowed unsecured claims for contributions to an employee benefit plan —

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of —

(i) the number of employees covered by each such plan multiplied by $10,950; less

(ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

21. For most Employees and Independent Contractors, the Debtors believe that the amount of prepetition wages, salaries, contractual compensation and benefits owing will not exceed the sum of $10,950 allowable as a priority claim under section 507(a)(4) or section 507(a)(5) of the Bankruptcy Code.[5] Therefore, the payment of these amounts pursuant to this Motion would not deplete assets otherwise available to general unsecured creditors under a plan.

---

[5] Some Employees' and Independent Contractors' prepetition wages, salaries, contractual compensation and benefits owing will exceed the sum of $10,950 allowable as a priority claim under section 507(a)(4), due primarily to the Debtors' vacation policy. Vacation pay accrues from year to year and is not lost at year end. This Motion seeks to pay each Employee and Independent Contractor up to $10,950 in accordance with section 507(a)(4) of the Bankruptcy Code. This Motion is without prejudice to the Debtor's right to later seek relief by separate motion to pay the claims of Employees and Independent Contractors which exceed $10,950.

10

## The Doctrine of Necessity Provides a Basis for Granting the Requested Relief

22. Moreover, payment of Prepetition Compensation, Prepetition Business Expenses, Outsource Workforce Costs, Deductions, Withholdings, Benefits, Prepetition Processing Costs and Workers' Compensation Premiums is appropriate pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

23. Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of bankruptcy courts, authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

24. It is well established under the "doctrine of necessity" that bankruptcy courts have the equitable power to authorize the payment of prepetition claims where such payments are necessary to preserve the going concern value of a debtor's business, thereby facilitating its reorganization. See, e.g., Miltenberger v. Logansport, Crawfordsville and Sw. Ry. Co., 106 U.S. 286, 311 (1882) (holding that "[m]any circumstances may exist which may make it necessary and indispensable to . . . the preservation of the property, for the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership . . . ."); see also In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment).

25. As such, a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing Miltenberger, 106 U.S. at 311); see In re Eagle-Picher Indus., Inc., 124 B.R. 1021,

11

DEL1 73652-2

1023 (Bankr. S.D. Ohio 1991) (supporting principle that bankruptcy court can authorize payment of pre-petition claims where such payment is necessary to survival of debtor); In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor.").

26. The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the going concern value of an operating business, and prepetition claims may be paid if necessary to perform the debtor's duty. See In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). A bankruptcy court's exercise of its authority under section 105(a) of the Bankruptcy Code is also appropriate to carry out two central policies underlying Chapter 11: (a) to permit the successful rehabilitation of the debtor; and (b) to preserve going concern value and maximize property available to satisfy all creditors.

27. The relief sought herein is essential to the Debtors' reorganization. The Debtors seek the relief requested in this Motion because any delay or disruption in the provision of employee benefits or payment of compensation (including the payment of Prepetition Compensation, Prepetition Business Expenses, Outsource Workforce Costs, Deductions, Withholdings, Benefits and Prepetition Processing Costs) will destroy the Debtors' relationships with the Employees, the Independent Contractors and Outsource Agencies and irreparably impair

workforce morale at the very time when the dedication, confidence and cooperation of the Employees, Independent Contractors and the Outsource Workforce are most critical. The Debtors face the risk that their operations may be severely impaired if authority is not granted immediately for the Debtors to make the payments described above.

28. In addition, bolstering the morale of the Employees, Independent Contractors and the Outsource Workforce and ensuring the uninterrupted availability of their services will assist the Debtors in (a) maintaining a "business as usual" atmosphere, and (b) preserving the Debtors' relationships with customers and vendors, as well as the general public, with which the Employees and Independent Contractors are the Debtors' primary interface. Finally, the Debtors must continue their corporate policies of permitting certain Employees and Independent Contractors to incur business related expenses and thereafter seek reimbursement by submitting appropriate invoices or vouchers to maintain necessary oversight and quality control and to enable many key Employees and Independent Contractors to perform their jobs effectively.

29. Because the amounts represented by Prepetition Compensation, Prepetition Business Expenses and Deductions are needed to enable the Employees and Independent Contractors to meet their own personal obligations, the Employees and Independent Contractors will suffer undue hardship and, in many instances, serious financial difficulties absent the relief requested herein. Moreover, without the requested relief, the stability of the Debtors' businesses would be undermined by the threat that otherwise loyal Employees at all levels, as well as Independent Contractors, would seek other employment.

30. In light of the foregoing, the Debtors respectfully submit that the payment of the Prepetition Compensation, Prepetition Business Expenses, Outsource Workforce Costs, Deductions, Withholdings, Benefits, Prepetition Processing Costs and Workers Compensation

DEL1 73652-2

Premiums is essential for the Debtors' reorganization, represents an exercise of the Debtors' sound business judgment and is in the best interests of the Debtors' estates and creditors.

31. Relief similar to the relief requested herein has been granted by courts in this District and elsewhere in other Chapter 11 cases. *See, e.g.,* In re Cynergy Data, LLC, Case No. 09-13038 (KG) (Bankr. D. Del. Sept. 2, 2009); In re Eddie Bauer Holdings, Inc., Case No. 09-12099 (MFW) (Bankr. D. Del. June 18, 2009); In re JHT Holdings, Inc., Case No. 08-11267 (BLS) (Bankr. D. De. June 25, 2008); In re Holly Performance Prods., Inc., Case No. 08-10256 (PJN) (Bankr. D. Del. Feb. 12, 2008); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Jan. 23, 2008); In re Earthsell Corp., Case No. 07-10086 (Bankr. D. Del. Jan. 24, 2007); In re Musicland Holding Corp., No. 06-10064 (Bankr. S.D.N.Y. Feb. 1, 2006); In re Calpine Corp., No. 05-60200 (Bankr. S.D.N.Y. Dec. 21, 2005).

**Funds Held in Trust Are Not Available for General Distribution to Creditors**

32. Section 541(d) of the Bankruptcy Code excludes "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest." 11 U.S.C. § 541(d). It is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate. See Begier v. IRS, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); McCafferty v. McCafferty, 96 F.3d 192, 196 (6th Cir. 1996) (citing Begier with approval and stating that "[s]ection 541(d) [of the Bankruptcy Code] has often been invoked as the basis for excluding from a bankruptcy estate assets held in constructive trust by a debtor in favor of another."); City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.), 41 F.3d 92, 98-103 (3d Cir. 1994) (holding that funds withheld from employees' paychecks may be subject to a

14

DEL1 73652-2

trust, and thus are not property of a debtor's estate, even where such funds are commingled with the debtor's other property). Accordingly, such funds are not available for general distribution to a debtor's creditors.

33. To avoid the serious disruption of the Debtors' reorganization efforts that could result from the nonpayment of any withholding taxes, the Debtors seek authority to remit all Withholdings, including prepetition Withholdings collected on behalf of the Employees, to the applicable taxing authorities to the extent that the Withholdings have not already been remitted. The Withholdings are held in trust for the benefit of the appropriate federal, state or local taxing authority for employees on behalf of whom such payment is being made. As such, the Withholdings are not property of the Debtors' estates within the meaning of section 541 of the Bankruptcy Code. Because the Withholdings are held in trust on behalf of others and thus do not constitute property of the Debtors' estates, the remittance of the Withholdings will not adversely affect the Debtors' estate or their creditors and is warranted.

### REQUEST FOR AUTHORITY FOR BANKS TO HONOR CHECKS AND PAY CHECKS AND ELECTRONIC PAYMENT REQUESTS ISSUED TO PAY PREPETITION COMPENSATION, PREPETITION BUSINESS EXPENSES, OUTSOURCE WORKFORCE COSTS, DEDUCTIONS, WITHHOLDINGS, BENEFITS, PREPETITION PROCESSING COSTS, AND WORKERS' COMPENSATION PREMIUMS

34. In addition, by this Motion, the Debtors request that all applicable banks and other financial institutions be authorized and directed, when requested by the Debtors in the Debtors' sole discretion, to receive, process, honor and pay any and all checks and electronic payment requests presented for payment of, and to honor all fund transfer requests made by the Debtors related to Prepetition Compensation, Prepetition Business Expenses, Outsource Workforce Costs, Deductions, Withholdings, Benefits, Prepetition Processing Costs, and Workers' Compensation Premiums, whether such checks were presented or electronic payment requests

were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtors represent that all checks or electronic payments drawn on the Debtors' payroll accounts relate directly to the requested payment of Prepetition Compensation, Prepetition Business Expenses, Outsource Workforce Costs, Deductions, Withholdings, Benefits, Prepetition Processing Costs, and Workers' Compensation Premiums. The Debtors represent that those checks or electronic payments drawn on the Debtors' disbursement accounts other than the Debtors' payroll accounts can be readily identified as relating directly to the authorized payment of Prepetition Compensation, Prepetition Business Expenses, Outsource Workforce Costs, Deductions, Withholdings, Benefits, Prepetition Processing Costs, and Workers' Compensation Premiums and the Debtors will provide a list of such checks or electronic payments to the Debtors' banks. Accordingly, the Debtors believe that checks and electronic payment requests other than those relating to authorized payments will not be honored inadvertently.

35. The Debtors further represent that they have anticipated access to sufficient debtor in possession financing to pay all Prepetition Compensation, Prepetition Business Expenses, Outsource Workforce Costs, Deductions, Withholdings, Benefits, Prepetition Processing Costs and Workers' Compensation Premiums, to the extent described herein, as such amounts become due in the ordinary course of their businesses.

36. Nothing contained herein is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim is a claim for Prepetition Compensation, Prepetition Business Expenses, Outsource Workforce Costs, Deductions, Withholdings, Benefits, Prepetition Processing Costs

and Workers' Compensation Premiums; or (e) a request to assume any executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.

## SATISFACTION OF BANKRUPTCY RULE 6003

37. Pursuant to Rule 6003(b) of the Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**"), "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding the following: ...(b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001." The payments proposed herein are essential to prevent immediate and irreparable harm to the Debtors' business operations. Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 have been satisfied.

## WAIVER OF BANKRUPTCY RULE 6004

38. The Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of ten (10) days after the entry of the order, unless the court orders otherwise." The payments proposed herein are essential to prevent immediate and irreparable harm to the Debtors' business operations. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the ten (10) day stay imposed by Rule 6004(h), to the extent that it applies.

## NOTICE

39. No trustee or examiner has been appointed in these cases. Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' 40 largest unsecured creditors on a consolidated basis; (iii) counsel for Bank of America;

and, (iv) all parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors. Because of the exigencies of the circumstances and the irreparable harm to the Debtors that will ensue if the relief requested herein is not granted, the Debtors submit that no other notice need be given.

## NO PRIOR REQUEST

40. No prior motion for the relief requested herein has been made by the Debtors to this or any other court.

41. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the Debtors request the relief sought by this Motion be immediately effective and enforceable upon entry of the order requested hereby.

**WHEREFORE**, the Debtors respectfully request that this Court enter an order (a) enter an order substantially in the form annexed hereto as **Exhibit C**, granting the relief requested herein; and (b) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: January 20, 2010                                Respectfully submitted,

By:  /s/ Domenic E. Pacitti
     _____
     Domenic E. Pacitti (Bar No. 3989)
     Michael Yurkewicz (Bar No. 4165)
     KLEHR HARRISON HARVEY BRANZBURG LLP
     919 North Market Street, Suite 1000
     Wilmington, Delaware 19801-3062
     Telephone: 302.426.1189
     Facsimile: 302.426.9193
     E-mail: dpacitti@klehr.com
     E-mail: myurkewicz@klehr.com

     - and -

     Robert A. Guy, Jr.*
     J. Matthew Kroplin*
     FROST BROWN TODD LLC
     424 Church Street, Suite 1600
     Nashville, Tennessee 37219
     Telephone: 615.251.5550
     Facsimile: 615.251.5551
     E-mail: bguy@fbtlaw.com
     E-mail: mkroplin@fbtlaw.com

     - and -

     Ronald E. Gold*
     Beth A. Buchanan*
     Lindsey F. Baker*
     FROST BROWN TODD LLC
     2200 PNC Center
     201 East Fifth Street
     Cincinnati, Ohio 45202
     Telephone: 513.651.6800
     Facsimile: 513.651.6981
     E-mail: rgold@fbtlaw.com
     E-mail: bbuchanan@fbtlaw.com
     E-mail: lbaker@fbtlaw.com
     *Pro Hac Vice Motion Pending

     **PROPOSED CO-COUNSEL FOR DEBTORS AND DEBTORS-IN-POSSESSION**