# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| | |
| SPECIALTY PACKAGING HOLDINGS, INC., *et al.*,[1] | Case No. 10-10142 (KG) |
| | |
| Debtors. | (Joint Administration Requested) |
| | |
| | Related to Docket No. 14 |

## INTERIM FINANCING ORDER (I) (A) REGARDING POSTPETITION FINANCING; (B) USE OF CASH COLLATERAL; (C) SUPERPRIORITY LIENS AND CLAIMS; AND (D) ADEQUATE PROTECTION; AND (II) SCHEDULING AND ESTABLISHING DEADLINES RELATING TO A FINAL HEARING ON SUCH MATTERS

Upon the motion (the "Motion"), dated January 20, 2010, of Specialty Packaging Holdings, Inc. ("SPH"), together with its direct and indirect subsidiaries, The Specialty Packaging Group, Inc. ("SPG"), Cosmetics Specialties, Inc. ("CSI"), Cosmolab, Inc. ("Cosmolab"), Cosmetics Specialties East, LLC ("CSE"), and Cosmolab New York, Inc. ("CNY") (each a "Debtor" collectively, the "Debtors"), pursuant to sections 105, 361, 362, 363, and 364 of the United States Bankruptcy Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code"), (a) for the entry of this Interim Financing Order and the Final Financing Order (as defined herein) authorizing the Debtors to: (i) obtain post-petition financing pursuant to section 364 of the Bankruptcy Code; (ii) authorize the use of cash collateral pursuant to section 363 of the Bankruptcy Code; (iii) execute and enter into the DIP Loan Documents (as defined herein) substantially in the form annexed to the Motion as Exhibit B and to perform such other and

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Specialty Packaging Holdings, Inc. (7942), The Specialty Packaging Group, Inc. (6668), Cosmetics Specialties, Inc. (0826), Cosmolab, Inc. (1367), Cosmetics Specialties East, LLC (0313), and Cosmolab New York, Inc. (2222). The primary mailing address for the Debtors is: 1100 Garrett Parkway, Lewisburg, TN 37091

further acts as may be required in connection with the DIP Loan Documents; (iv) grant priming liens and superpriority claims to and on behalf of and for the benefit of the Agent and the Bank in all Collateral in accordance with the DIP Loan Documents (as defined herein) and this Interim Financing Order and the Final Financing Order (as defined herein) to secure any and all of the DIP Facility Obligations (as defined herein); (v) subject to the terms and limitations herein, use Cash Collateral (as defined herein); and (vi) (a) pending a final hearing on the Motion (the "Final Hearing"), obtain emergency postpetition loans under the DIP Credit Agreement (as defined herein) in an amount not to exceed $1,200,000 and authorization to use cash collateral to and including the date on which the Final Financing Order is entered, (b) requesting the provision of adequate protection for the Debtors' Pre-Petition Lender, and (c) in accordance with Rules 4001(b)(2) and (c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting that this Court schedule the Final Hearing and approve notice with respect thereto; and the Court having considered the Motion and the exhibits attached thereto, including, without limitation, the DIP Loan Documents; and a hearing to consider approval of the interim commitment having been held and concluded on January 21, 2010 (the "Interim Hearing"); and upon all of the pleadings filed with the Court and all of the proceedings held before the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor;

## BASED ON THE RECORD, THE COURT HEREBY FINDS:

A. On January 20, 2010 (the "Filing Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors are continuing in the management and possession of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. No request has been made for the appointment of a trustee or examiner and no statutory committee (a "Committee") has yet been appointed in the Debtors' Chapter 11 Cases (each a "Case" and collectively, the "Cases")

C. Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O). This Bankruptcy Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. Without prejudice to the rights of any other creditor or other party-in-interest (including any official creditors' committee), the Debtors acknowledge, admit and confirm the following as of the Filing Date:

(i) Pursuant to that certain Amended & Restated Credit Agreement, dated as of February 17, 2005 (as amended, restated or otherwise modified from time to time, the "Pre-Petition Credit Agreement"), among SPG, as borrower, SPH, CSI, Cosmolab, CSE, and CNY, together with other parties, as guarantors, and Bank of America, N.A. ("BANA"), as Administrative Agent (in such capacity, the "Pre-Petition Agent"), and as Lender (in such capacity, the "Pre-Petition Lender") and together with the Pre-Petition Agent, the "Pre-Petition Secured Parties"), the Pre-Petition Lender made loans and other financial accommodations to, among others, the Debtors. All such loans, financial accommodations and other amounts owing under, or in connection with, the Pre-Petition Credit Agreement and all collateral and ancillary documents executed in connection therewith (collectively, the "Pre-Petition Loan Documents") are hereinafter referred to as the "Prior Bank Obligations".

(ii) The Prior Bank Obligations are not subject to disallowance, subordination, re-characterization, defense, counterclaim, cross-claim, deduction or offset of any kind or

3

otherwise avoidable, and as of the Filing Date, the Debtors were liable to the Pre-Petition Lender in respect of loans made by the Pre-Petition Lender pursuant to the Pre-Petition Credit Agreement in the aggregate amount of not less than $16,239,148, consisting of (i) the aggregate principal amount; and (ii) accrued and unpaid interest thereon at the applicable rate as well as attorneys' fees, costs and other expenses.

(iii)    The Prior Bank Obligations are secured by valid, perfected, enforceable, first-priority liens and security interests (collectively, the "Pre-Petition Liens") granted by the Debtors to the Pre-Petition Secured Parties, which liens and security interests are not subject to subordination, defense, disallowance or otherwise avoidable, upon substantially all of the Debtors' assets (the "Pre-Petition Encumbered Assets").

(iv)    The Pre-Petition Loan Documents are valid and binding agreements and obligations of the Debtors, and the Pre-Petition Liens on the Pre-Petition Encumbered Assets: (i) constitute valid, binding, enforceable and perfected first priority security interests and liens; and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination by the Debtors pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(v)    (i) The Prior Bank Obligations constitute legal, valid and binding obligation of the Debtors, enforceable in accordance with their terms; (ii) the Debtors have no objection, offset, defense or counterclaim of any kind or nature to the Prior Bank Obligations; and (iii) the Prior Bank Obligations, and any amounts previously paid to any Pre-Petition Agent or the Pre-Petition Lender on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

4

(vi)     The Pre-Petition Agent (on its behalf and on behalf of the Pre-Petition Lender) perfected its security interests and liens in and on the Pre-Petition Encumbered Assets.

(vii)    For purposes of sections 506(c) and 507(b) of the Bankruptcy Code and Fed. R. Bankr. P. 3012, as of the Filing Date, the value of the Pre-Petition Secured Parties' interest in the Pre-Petition Encumbered Assets was not less than $15,400,000; provided, however, that nothing herein shall prejudice the Pre-Petition Agent's and/or the Pre-Petition Lender's right to later: (1) assert that their respective interests in the Pre-Petition Encumbered Assets lack adequate protection or (2) seek a different valuation of the Pre-Petition Encumbered Assets, it being understood, that the Pre-Petition Agent asserts that value of the Pre-Petition Encumbered Assets will be deemed to have been higher, on a dollar-for-dollar basis, by an amount equal to the amount, if any, by which the amount ultimately recovered by virtue of the Sale Process exceeds the amount that would have been received under the Stalking Horse Bid (as such term is defined herein) (as such Bid was constituted on the Filing Date).

E. That portion of the Pre-Petition Encumbered Assets constituting cash or cash equivalents, including cash constituting the proceeds, product, or profits of any Pre-Petition Encumbered Assets received after the Filing Date, may constitute cash collateral of the Pre-Petition Lender within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral"). The Debtors have no cash or assets readily convertible into cash that are not subject to the asserted liens and security interests of the Pre-Petition Agent on behalf of the Pre-Petition Lender.

F. The Debtors do not have sufficient financing to fund their operations on a long-term basis, and as a result, the Debtors have determined that the appropriate course is a sale of substantially all of their assets under section 363 of the Bankruptcy Code. Towards that end, the

5

Debtors filed on the Filing Date a motion seeking the institution and pursuit of such a section 363 sale process (the "Sale Process") based on a stalking horse bid from All4 Cosmetics, Inc. (the "Stalking Horse Bid"). The post-petition financing and cash collateral arrangements described in the Motion is conditioned upon and otherwise tied to the Sale Process.

G. The use of the Cash Collateral alone will not be sufficient to fund the operations of the Debtors. The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code. Financing on a post-petition basis is not otherwise available without the Debtors granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness and obligations with security interests in, and liens on, the pre-petition and post-petition property of the Debtors, whether existing on the Filing Date or thereafter acquired, as described below, pursuant to sections 364(c)(2), 364(c)(3), 364(d)(1) of the Bankruptcy Code. The Debtors require post-petition financing to continue operating, so the Debtors seek authority to enter into a debtor-in-possession revolving credit facility (as the same may be amended, supplemented or otherwise modified from time to time, the "DIP Revolving Facility") on a superpriority and priming basis on the terms set forth in the proposed DIP financing agreement (as the same may be amended, supplemented or otherwise modified from time to time, the "DIP Credit Agreement")[2] that would be executed among the parties after the entry of this Interim Financing Order between the Debtors and BANA, as Administrative Agent (in such capacity, the "Agent"), and as a Lender (in such capacity, the "Bank") and all other documents, agreements or instruments in connection

---

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings assigned thereto in the DIP Credit Agreement.

therewith or related thereto (collectively, as the same may be amended, supplemented or otherwise modified from time to time, the "DIP Loan Documents"), providing for secured postpetition financing up to an aggregate principal amount consisting of (1) up to $2,500,000 in incremental funding and (2) $12,900,000 to be used solely in payment of that amount of the Prior Bank Obligations (the "DIP Facility").

H. The relief requested in the Motion, which relief is a condition to the financing, use of Cash Collateral, priming liens and other matters set forth herein, is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of its assets and is otherwise necessary to avoid immediate irreparable harm to the Debtors' estates pending the Final Hearing, and is in the best interests of the Debtors, their estates, and their creditors.

I. The terms and conditions of the DIP Loan Documents and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

J. The post-petition financing arrangement described in the Motion and set forth in the DIP Loan Documents and herein entered into by the Pre-Petition Lender, the Pre-Petition Agent, the Bank, the Agent, and the Debtors were negotiated at arm's length and in good faith as that term is defined in section 364(e) of the Bankruptcy Code, and the Pre-Petition Lender, the Pre-Petition Agent, the Agent, and the Bank are entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

K. The Pre-Petition Agent and the Pre-Petition Lender have consented to: (i) the priming of the Pre-Petition Liens by the DIP Liens (as defined herein) on the terms and conditions set

7

forth in this Interim Financing Order; and (ii) to the Debtors' use of the Pre-Petition Lender's Cash Collateral. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of such parties.

L. Upon entry of this Interim Financing Order, the Pre-Petition Agent's interests in the Pre-Petition Encumbered Assets will be provided the adequate protection set forth herein and contemplated to be continued in the Final Financing Order.

M. Notice of the relief sought by the Motion and the hearing with respect thereto was delivered on January 20, 2010 via overnight mail to the following parties in interest: (i) the United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) those parties listed on the Consolidated List of Creditors Holding Largest Thirty Unsecured Claims Against each Debtor, as identified in the Debtors' Chapter 11 petitions; (iii) counsel to the Agent and the Pre-Petition Agent; (iv) the Internal Revenue Service; and (v) any party that has filed a lien against any of the Debtors' assets (collectively, the "Interim Notice Parties"). Given the nature of the relief sought in the Motion, such notice constitutes sufficient and adequate notice of this Interim Financing Order pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by sections 363(b) and 364(d) of the Bankruptcy Code, and no further notice of the Motion or this Interim Financing Order is necessary or required.

N. The Debtors have requested, and good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein, pending the Final Hearing. Absent entry of this Interim Financing Order, the Debtors' estates will be immediately and irreparably harmed.

**8**

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    <u>Motion Granted.</u>  The Motion is granted in its entirety subject to the provisions hereof.  Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits.  This Interim Financing Order shall become effective immediately upon its entry.

2.    <u>DIP Loan Documents.</u>

(a)    Upon finalizing and executing the DIP Credit Agreement, a copy of which was attached to the Motion, and the other DIP Loan Documents described in the DIP Credit Agreement and made available at the hearing, the Debtors are hereby authorized to immediately enter into each and all of the DIP Loan Documents to which they are a party, which, upon execution and delivery thereof, shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms (including, without limitation, the use of DIP Facility proceeds or proceeds of Collateral (as defined herein) to reduce Prior Bank Obligations).

(b)    To enable the Debtors to continue to operate their businesses, during the period from the entry of this Interim Financing Order through and including the earlier of the entry of a Final Financing Order or February 8, 2010 (the "<u>Interim Period</u>"), and subject to the terms and conditions of this Interim Financing Order and the DIP Loan Documents, including, without limitation, the budget-related covenants contained in the DIP Credit Agreement (as the same may be modified, supplemented or updated from time to time, the "<u>Budget Covenants</u>"), the Debtors are hereby authorized to borrow under the DIP Revolving Credit Facility in an aggregate outstanding principal amount not to exceed $1,200,000.  Following the expiration of

9

the Interim Period, the Debtors' ability to borrow further DIP Facilities will be governed by the terms of the Final Financing Order.

(c) The Debtors are authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, security agreements, mortgages and financing statements) that may be contractually required or necessary (as the case may be) for the Debtors' performance of the DIP Loan Documents. The Debtors, the Agent and the Bank may amend or modify the DIP Loan Documents, with the requisite consent of the Pre-Petition Lender (if applicable), without the necessity of any further Bankruptcy Court approval so long as any such amendment or modification does not materially alter the provisions of this Interim Financing Order or the Final Financing Order. Consistent with the terms of the DIP Credit Agreement and the other DIP Loan Documents, the Debtors may use advances under the DIP Revolving Credit Facility as provided in the DIP Credit Agreement, including the payment of the Prior Bank Obligations with proceeds of the DIP Facility or the Collateral.

3. Modification of the Automatic Stay. The automatic stay under section 362(a) of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to permit the Agent for the sole benefit of the Bank or the Pre-Petition Agent for the sole benefit of the Pre-Petition Lender, as the case may be, to receive, collect and apply payments and proceeds in respect of the assets of the Debtors (including the Pre-Petition Encumbered Assets) and in accordance with the terms and provisions of this Interim Financing Order and the DIP Loan Documents.

4. Fees and Expenses. The Debtors are authorized and directed to and shall pay (and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent

10

necessary) fees and expenses that may be required under the DIP Loan Documents, as such fees and expenses become due, including, without limitation, agent fees, commitment fees, letter of credit fees, underwriting fees, and reasonable attorneys', financial advisors', and accountants' fees and disbursements and fees in respect of internal auditors, all as provided for in and subject to the DIP Loan Documents[3]. In addition, subject to entry of the Final Financing Order (other than with respect to any indemnity claims relating to the interim funding authorized herein), the Debtors are hereby authorized and directed to indemnify the Agent and the Bank, exclusively in their capacity as such, against any liability arising in connection with the DIP Loan Documents to the extent provided in and subject to the DIP Loan Documents. All such fees, expenses, and indemnities of the Agent and Bank shall constitute DIP Facility Obligations and shall be secured by the DIP Liens and afforded all of the priorities and protections afforded to the DIP Facility Obligations under this Interim Financing Order and the other DIP Loan Documents.

5.     DIP Facility Obligations.  All obligations owed to the Agent and/or the Bank (collectively, and solely in their respective capacities as Agent and Bank and not in their capacity as Agent or Lender under any other facility, collectively the "DIP Secured Parties") under or in connection with the DIP Loan Documents, including, without limitation, all loans, advances, letters of credit and other indebtedness, obligations and amounts (contingent or otherwise) owing from time to time under or in connection with the DIP Loan Documents, and any and all other obligations at any time incurred by the Debtors to any of the DIP Secured Parties, are defined and referred to herein as the "DIP Facility Obligations".

---

[3] Without limiting the generality of the foregoing, but to avoid uncertainty, the presence of the Secured Lender Counsel (incl. local counsel) line item under the Heading "Bank Debt" on the Debtors' Interim Budget (as such term is defined herein), and attached hereto as Exhibit A, is purely for budget planning purposes and in no manner whatsoever limits the Debtors' obligations with respect to those amounts.

11

6.     Interest on the DIP Facility Obligations;.  Interest on the DIP Facility Obligations (as defined herein) shall accrue at the rates (including any applicable default rates) and shall be paid by the Debtors at the times as provided in the DIP Loan Documents.

7.     Additional Agreements.  The Debtors are hereby authorized and directed to enter into any additional agreements providing for the establishment of lock boxes, blocked accounts or similar arrangements required or requested by the Agent (or other banks or financial institutions acceptable to the Agent) for the benefit and in favor of the Bank for purposes of facilitating cash collections from the Debtors in accordance with and subject to the terms of the DIP Loan Documents.

8.     Use of Cash Collateral.  Prior to the entry of the Final Financing Order and the partial payment of the Prior Bank Obligations in the "Roll-Up Amount" of $12,900,000 (the "Roll-Up Amount"), the Debtors are authorized and directed to remit the Cash Collateral, including, without limitation, all collections on accounts receivable received after the Filing Date, to the Pre-Petition Agent to be applied in partial satisfaction of Prior Bank Obligations owing under the Pre-Petition Loan Documents.  The Debtors' remitting of such Cash Collateral to the Pre-Petition Agent (and the payment of the Roll-Up Amount contemplated to be authorized pursuant to the Final Financing Order) is an express condition to the consent of the Pre-Petition Lenders to the priming of the Pre-Petition Agent's Pre-Petition Liens, to the Carve-Out (as set forth in Paragraph 22), and the other provisions of this Interim Financing Order.  Except as authorized and permitted herein, the Debtors shall not use the Cash Collateral as may from time to time be in their possession or control.  After the payment of the Roll-Up Amount to the Pre-Petition Agent, the Debtors are contemplated to be authorized in the Final Financing Order to remit the Cash Collateral on a daily basis to the Agent for application against the

12

outstanding DIP Facility, to be available for re-borrowing to the extent, and under the circumstances, otherwise permitted pursuant to the provisions of the DIP Credit Agreement.

9.    DIP Budget/Permitted Uses.  In addition to all, and without limiting any, of the other limitations on the Debtors in their use of Cash Collateral and portions of the Pre-Petition Encumbered Assets or in the use of funds borrowed under the DIP Credit Agreement that are set forth in this Interim Financing Order and/or in the DIP Credit Agreement:

(a)    Cash Collateral or funds borrowed under the DIP Credit Agreement, to the extent otherwise permitted under the DIP Loan Documents, may be used to pay only Critical Vendor line items, post-petition operating expenses, and post-petition professional fees and expenses as set forth in an Operating Budget that has been approved in writing by the Agent (an "Approved Budget"), provided, however, that no Cash Collateral or funds borrowed under the DIP Credit Agreement shall be used to make any payment to a Critical Vendor unless such Critical Vendor has committed, in writing, to waive, discharge, and release the Stalking Horse Bidder (or similar purchaser) from any and all claims, causes of action, defenses, setoff, recoupment or other offset rights, whether arising at law or equity, with respect to any and all debts or obligations incurred by the Debtors to such Critical Vendor prior to the Filing Date.  The Operating Budgets for the period from January 24, 2010 through April 18, 2010 (the "Initial Budgets") are attached hereto as Exhibit A and shall be deemed to constitute Approved Budgets for such period.

(b)    If the Debtors elect to modify any Initial Budget or any subsequent Approved Budget, the Debtors shall submit the modified Operating Budget(s) to the Agent (for distribution to the Bank) for approval by the Agent and the Bank.    It shall be in form similar to the Initial Budgets and shall be in substance satisfactory to the Agent, that shows on a line-item

13

basis and broken out on a week-by-week budgetary basis for a rolling thirteen week period (x) the Debtors' forecasted sales and its forecasted cash receipts (excluding as a result of borrowings under the DIP Credit Agreement) and (y) anticipated disbursements of the Debtors for the weekly periods covered by such Operating Budget. Within four (4) business days of the Agent's receipt of a timely-tendered Operating Budget sought to be modified, the Agent shall inform the Debtors as to the decision of the Bank as to whether to approve or disapprove any or all of the expense line items set forth on any such tendered Operating Budget, and the aggregate of items, if any, so approved (and not those disapproved) by the Agent and the Bank in such modified and re-submitted Operating Budget for such period shall then set forth and constitute the Approved Budget for such period on a going-forward basis.

(c) Subject to the limitations of subsection (d), in no event shall the actual aggregate weekly expenditures for any operative Approved Budget by the Debtors exceed the amount budgeted therefor on such operative Approved Budget by more than ten percent (10%) as measured on a cumulative basis through the date of determination (the "Permitted Variance"). The Permitted Variance shall not apply to Critical Vendor or Professional Fees and Expenses Line Items (such capitalized term defined as those certain expenses as set forth under the heading of "Bankruptcy Expenses" on the Interim Budget, the "Professional Fees & Expenses Line Items"), and, accordingly, under no circumstances shall the actual aggregate expenditures for any Critical Vendor line items or Professional Fees & Expenses Line Items exceed the amount budgeted therefor on such line item on the operative Approved Budget by the Debtors.

(d) In the event that the actual expenditures for a budgetary period are less than the budgeted amount for such period under an Approved Budget ("Carryover Allowance"), such unused budgeted expenditures in each pertinent line item (including Critical Vendor and/or

14

Professional Fees & Expenses) may be carried over for use in the payment only of amounts relating to each such pertinent line item to the next budgetary week (and, to the extent not entirely used in that next budgetary week, further may be carried over to any and all budgetary weeks until so fully used in the payment only of amounts relating to each such pertinent line item). Specifically, in the event of a Carryover Allowance, the budgeted amount in each pertinent line item (including Critical Vendor line items and/or the Professional Fees & Expenses Line Items) for the next, successive budgetary period(s) may be exceeded by the amount of the Carryover Allowance for each such line item.

(e)     In no event shall the actual aggregate sales realized by the Debtors after the Filing Date for any monthly period be less than 90% of the amount forecast for such monthly period on the operative Approved Budget.

(f)     In no event shall the actual aggregate cash receipts received by the Debtors after the Filing Date for any monthly period be less than 90% of the amount of such cash receipts forecast for such monthly period on the operative Approved Budget.

(g)     No later than one week after the conclusion of each week period, the Debtors shall furnish the Agent (for distribution to the Bank) with weekly reconciliations of projected versus actual sales, cash receipts and disbursements for that prior week.

(h)     Without limiting the generality of the other provisions of this Interim Financing Order, and notwithstanding the provisions of any order authorizing the interim or final payment of professional fees and expenses or of the DIP Credit Agreement, the Debtors shall not be authorized to advance or otherwise pay and shall not advance or otherwise pay more on account of such fees than the budgeted amount for such professional or professional firm set forth on the Approved Budget for the period prior to the occurrence of a Event of Default (or

15

where the concept of Event of Default is no longer applicable because there has been a prior payment in full of the DIP Facility Obligations, a Cash Collateral Event of Default), plus such professional's pro rata share of the $175,000 maximum of Post-Default Fees and Expenses (as defined herein).

(i)     In the event that the DIP Facility is terminated and the DIP Facility Obligations have been finally paid in full, the Pre-Petition Agent shall succeed to the budget approval rights under this Paragraph 9 previously exercised by the Agent, and the Pre-Petition Agent shall thereafter exercise such rights at the direction of the Pre-Petition Lender under the Pre-Petition Credit Agreement.

(j)     The Pre-Petition Agent and the Pre-Petition Lender shall be entitled to receive and shall receive all financial statements, reports and other information including, but not limited to, Operating Budgets (including, without limitations, any proposed modified Operating Budgets), and/or any weekly sales/receipts/disbursements reconciliations, that will be required to be provided to the Agent and the Bank as described herein or in the DIP Loan Documents.

10.     [Intentionally Omitted].

11.     Collateral. The Collateral (collectively, the "Collateral") securing the repayment, reimbursement, and satisfaction of the DIP Facility Obligations shall consist of all presently owned and hereafter acquired property, assets, interests and rights, of any kind or nature, of the Debtors, wherever located, including, without limitation, any deposits required or otherwise made in connection with the Sale Process or otherwise that are either forfeited or applied against any purchase price (or similar obligation) and any and all rights, claims, avoidance actions and other causes of action of the Debtors' estates (excluding only actions asserted by any Debtor or any subsequently appointed trustees or representatives of that Debtors' estates under sections

16

544, 545, 547, 548, 549, 550, 553(b), and 724(a) of the Bankruptcy Code (collectively, the "Bankruptcy Actions") and only for the purposes of this Interim Financing Order). The Final Financing Order requested to be entered at the Final Hearing is contemplated to contain provisions expressly including the Bankruptcy Actions as part of the Collateral, at least with respect to the up to $2,500,000 to be provided as incremental funding under the DIP Facility.

12.     Consensual Priming.    The Pre-Petition Secured Parties have consented to the priming of the Pre-Petition Liens by the DIP Liens, as well to the Carve-Out (as defined herein), on the terms and conditions set forth in the DIP Loan Documents and this Interim Financing Order.   The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of such parties.

13.     DIP Liens.   In order to provide the Bank with security for the Debtors' repayment, reimbursement, and satisfaction of any and all of the DIP Facility Obligations, but subject to the Carve-Out (as set forth in Paragraph 22), the Agent, on behalf of the Bank, shall have, and hereby is granted liens in the Collateral (the liens described in the following subparagraphs (a) – (c), collectively, the "DIP Liens"), as follows:

(a)     Pursuant to section 364(c)(2) of the Bankruptcy Code, for the sole benefit of the Bank, valid, binding, continuing, enforceable, first priority and fully perfected liens in the all of the Collateral that was unencumbered as of the Filing Date.

(b)     Pursuant to section 364(c)(3) of the Bankruptcy Code, for the sole benefit of the Bank, valid, binding, continuing, enforceable, first priority and fully perfected liens on all of the Collateral that was encumbered as of the Filing Date, junior only to the valid, perfected and non-avoidable liens on such assets as of the commencement of the Cases in favor of

creditors other than the Pre-Petition Agent and the Pre-Petition Lender and to valid liens in existence at the time of such commencement in favor of such other creditors that are perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code (the "Other Pre-Petition Liens").

(c)     Pursuant to section 364(d)(1) of the Bankruptcy Code, for the sole benefit of the Bank, and insofar as the priority of the liens of the Pre-Petition Agent for the benefit of the Pre-Petition Lender shall be concerned, valid, binding, continuing, enforceable, first priority and fully perfected liens on all of the Collateral that constitutes Pre-Petition Encumbered Assets.

14.     Super-Priority Claims.  In addition to the DIP Liens granted herein, but subject only to the Carve-Out (as set forth in Paragraph 22), all DIP Facility Obligations shall constitute allowed, super-priority, administrative expense claims under section 503(b) of the Bankruptcy Code and under section 364(c)(1) of the Bankruptcy Code (the "DIP Super-Priority Claims") against the Debtors, having priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those (after entry of the Final Financing Order) specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503, 506(c), 507, 546(c), 726, 1113 and 1114 of the Bankruptcy Code, or otherwise whether incurred in the Cases or any conversion thereof to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto.  The DIP Super-Priority Claims shall be payable from, and have recourse to, all pre-petition and post-petition property of the Debtors, whether existing on the Filing Date or thereafter acquired, and all proceeds thereof.

15.     Granting of Adequate Protection Liens.  In order to provide, pursuant to section 361(2) of the Bankruptcy Code, the Pre-Petition Lender with adequate protection against any diminution in the value of their interest in the Pre-Petition Encumbered Assets (existing as of the

**18**

Filing Date) resulting to the extent of any diminution in the value of the Pre-Petition Encumbered Assets (including Cash Collateral) from and after the Filing Date, including but not limited to any diminution in value resulting from: (i) the imposition of the automatic stay; (ii) the priming of the Pre-Petition Liens in favor of the DIP Facility Obligations; (iii) the use of the Pre-Petition Lender's Cash Collateral; (iv) the use, sale or lease of Pre-Petition Encumbered Assets; or (v) the subordination of the Pre-Petition Liens of the Pre-Petition Agent in and to the Pre-Petition Encumbered Assets to the extent of the DIP Facility Obligations, and the Carve-Out (as set forth in Paragraph 22), the Pre-Petition Agent, on behalf of the Pre-Petition Lender, shall continue to have, and hereby is granted to the extent not heretofore granted, liens (the "Adequate Protection Liens") against and in all presently owned and hereafter acquired property, assets, and rights, of any kind or nature, of the Debtors, wherever located, including, without limitation, any and all rights, claims, and causes of action of such Debtors' estates (excluding only the Bankruptcy Actions) (the "Adequate Protection Collateral").

16. <u>Reservation of Section 507(b) Rights</u>. While the Adequate Protection Liens are expressly excluded from attaching to the Bankruptcy Actions, the Pre-Petition Lender's rights under section 507(b) of the Bankruptcy Code are not waived, but instead are expressly reserved, including, without limitation, with respect to the proceeds of the Bankruptcy Actions. The Adequate Protection Liens shall be a first and prior lien on the Adequate Protection Collateral, subject only to any Other Pre-Petition Liens existing on the Adequate Protection Collateral, the DIP Liens, and the Carve-Out (as set forth in Paragraph 22). Consistent with the foregoing, this Paragraph is intended to provide the Pre-Petition Lender with security to protect (and is necessary to protect) the Pre-Petition Lender from any risk of erosion (or diminution) in the value of their Pre-Petition Encumbered Assets as such value existed on the Filing Date, which

19

erosion or diminution would give rise to an adequate protection claim in a minimum amount equal to the amount of such erosion or diminution, and to attempt to mitigate (with the other provisions of this Order) the effect of, without limitation: (i) the DIP Liens and (ii) the subordination of the Pre-Petition Liens in the Pre-Petition Encumbered Assets to the DIP Liens, and to the Carve-Out Amount (as set forth in Paragraph 22). Consistent with, but without limiting the generality of, the other provisions of this Interim Financing Order, each of the Agent (on behalf of the Bank) and the Pre-Petition Agent (on behalf of the Pre-Petition Lender) has expressly reserved any right to challenge any asserted Other Pre-Petition Liens in any manner whatsoever, including to contest the amount, the validity, perfection, or priority of any asserted Other Pre-Petition Liens, and nothing contained herein shall constitute a determination of the amount, validity, perfection, or priority of any asserted Other Pre-Petition Lien.

17.    Adequate Protection Claims. To the extent that the liens provided herein are insufficient to secure any adequate protection claim of the Pre-Petition Lender with respect to the Debtors' use, sale, lease, or further encumbrance of the Pre-Petition Encumbered Assets, the Pre-Petition Agent, on behalf of the Pre-Petition Lender, shall be granted allowed, super-priority claims under sections 364(c)(1) and 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"); provided, however, that such priority, consistent with the other provisions of this Order, shall be subordinate only to the DIP Liens and the Carve-Out Amount (as set forth in Paragraph 22, and *pari passu* with section 507(b) claims allowed in favor of any of the holders of any Other Pre-Petition Liens). Except as provided in this Interim Financing Order as to the superpriority status of the DIP Liens or the Carve-Out Amount (as set forth in Paragraph 22), no costs or expenses of administration which have been or may be incurred in these proceedings, or in any other proceeding related hereto, and no priority claims, are or will be prior to or on a

20

parity with the Adequate Protection Claims of the Pre-Petition Lender (provided, however, that any administrative claimant who is a professional shall be entitled to retain such payment only to the extent of the Carve-Out and that allowed section 507(b) claims of any of the holders of any Other Pre-Petition Liens may be granted on such a parity).

18. Deemed Satisfaction of Senior Claims from Unencumbered Assets. Notwithstanding any other provisions of this Interim Financing Order to the contrary, and in order to mitigate the effect of such a priming of the Pre-Petition Liens caused by the DIP Liens and the consensual subordination of the Pre-Petition Liens in favor of the Carve-Out set forth herein, the DIP Liens, as well as the priority of any Carve-Out claim, shall attach first to any assets unencumbered by liens in favor of the Pre-Petition Lender (excluding the Bankruptcy Actions), if any, and shall be deemed satisfied first by the application of any proceeds of such unencumbered assets. Where proceeds of encumbered assets shall have been paid in partial or complete satisfaction of any Carve-Out claims or any DIP Facility Obligations prior to the collection or other liquidation of any and all unencumbered assets (excluding the Bankruptcy Actions), such priority of attachment shall be implemented and otherwise realized through the Pre-Petition Agent and the Pre-Petition Lender being deemed to have been subrogated to such Carve-Out claims and/or DIP Facility Obligations to the extent that the holders of such claims received proceeds of encumbered assets in payment thereof, with the right of the Pre-Petition Agent to enforce such subrogation being suspended until after payment in full in cash of the DIP Facility Obligations and, to the extent provided for herein, of the Carve-Out claims.

19. Perfection of DIP Liens and Adequate Protection Liens. The liens and security interests granted to the Bank and the Pre-Petition Lender pursuant to this Interim Financing Order shall be valid, enforceable and perfected, as of the date of the commencement of the

21

Cases, without the need for the execution or filing of any further document or instrument otherwise required to be executed or filed under applicable non-bankruptcy law. Notwithstanding that no documents need be executed or filed to create or perfect the liens and security interests granted hereunder, the Debtors, and officers on their behalf, are hereby directed to execute and deliver such further documents as the Agent or the Pre-Petition Agent may, in their sole discretion, request to evidence and give notice of the liens granted hereunder; provided, further, that if the Agent or the Pre-Petition Agent shall, in its sole discretion, choose to require the execution of and/or file (as applicable) such mortgages, financing statements, notices of liens and other similar instruments and documents, all such mortgages, financing statements, notices of liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded *nunc pro tunc* at the time and on the date of the Filing Date. Each and every federal, state and local government agency or department is hereby directed to accept the entry by this Bankruptcy Court of this Interim Financing Order as evidence of the validity, enforceability and perfection on the Filing Date of the liens granted or authorized pursuant to this Interim Financing Order to or for the benefit of the Bank or the Pre-Petition Lender.

20. Effect on Avoided and Preserved Liens, etc. The DIP Liens and the Adequate Protection Liens shall be: (a) senior and accordingly not subject to any lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, the proceeds of such avoided liens being Collateral securing the DIP Facility Obligations, and after the satisfaction of the DIP Facility Obligations shall be available for the satisfaction of the Adequate Protection Lien; or (b) not subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise. No claim or lien having a priority superior to or *pari passu* with those granted by this Interim Financing Order with respect to the

22

DIP Facility Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction of the DIP Facility Obligations in the manner provided in the DIP Loan Documents.

21.     Section 506(c).  The Agent, the Bank, the Pre-Petition Agent, and/or the Pre-Petition Lender do not consent (nor shall they be deemed to have consented) in any manner whatsoever (whether through affirmative participation in these Cases, lack of objection, inaction, or otherwise) to the imposition of any surcharge against any of their collateral for any cost or expense of administration pursuant to section 506(c) of the Bankruptcy Code.  Without limiting the generality of the foregoing, (i) the consent of the Agent, the Bank, the Pre-Petition Agent, and/or the Pre-Petition Lender to the entry of this Interim Financing Order, (ii) any support, lack of objection, or other inaction on the part of the Agent, Bank, the Pre-Petition Agent, and/or Pre-Petition Lender regarding the conversion of any Case to one under Chapter 7 of the Bankruptcy or the appointment of any bankruptcy trustee, or (iii) any support, lack of objection, or other inaction on the part of the Agent, Bank, the Pre-Petition Agent, and/or the Pre-Petition Lender regarding the entry of any other order by the Bankruptcy Court, including, without limitation, any order approving a section 363 sale, or any fee or expense application of any professional, shall in no manner and for no purpose whatsoever ever be deemed to constitute any such consent for the imposition of any such charge against any of their respective collateral.

22.     Carve-Out

(a)     The DIP Liens, the Pre-Petition Liens, and the Adequate Protections Liens shall be junior, in each case, only to (collectively, but subject to the limitations set forth in this Paragraph, the "Carve-Out"): (i) the payment of fees pursuant to 28 U.S.C. § 1930, (ii) in the event of the occurrence and during the continuance of an Event of Default (as defined in the DIP

23

Loan Documents) (or where the concept of such an Event of Default is no longer applicable because there has been a prior payment in full of the DIP Facility Obligations, a Cash Collateral Event of Default (as such term is defined below)), or an event that would constitute such an Event of Default with the giving of notice or lapse of time, the determination of materiality or any of the foregoing, the payment of allowed and unpaid professional fees and disbursements incurred by the Debtors and any Committee appointed in the Cases after the date of such Default or Event of Default (and regardless of when such fees and expenses become allowed by order of the Bankruptcy Court), in an aggregate amount not in excess of $175,000 (the "Post-Default Fees and Expenses") (plus, all unpaid professional fees and disbursements incurred prior to the occurrence of such Default or Event of Default (and regardless of when such fees and expenses are allowed) to the extent (A) such fees and expenses do not exceed the amounts budgeted therefor on the pertinent Approved Budgets for the period prior to such Default or Event of Default (the "Budgeted Amounts") and (B) such fees and expenses have been or are subsequently allowed by the Bankruptcy Court. Unused amounts in the Carve-Out for any professional or in any other category shall not be carried over or otherwise be available to any other professional or in any other category. The Carve-Out for any professional or professional firm shall be reduced or deemed satisfied dollar-for-dollar by any and all amounts paid to such professional or professional firm, including in the form of a retainer that has not previously been applied in interim or final payment of allowed professional fees and expenses.

(d)     Nothing herein shall constitute a waiver by the Pre-Petition Agent, the Pre-Petition Lender, the Agent or the Bank of their rights to object to the fees and expenses of any professional retained by the Debtors or a Committee, all such rights being fully reserved.

24

(e)    Notwithstanding any other provisions of this Interim Financing Order to the contrary, no proceeds of any borrowings under the DIP Credit Agreement and no Cash Collateral may be used (and the Carve-Out relating to the professionals retained by the Debtors or any such committee in no manner shall be available) to challenge (as opposed to, solely in the case of any official creditors' committee, investigate) in any manner whatsoever, whether by motion, adversary proceeding, or other action or proceeding before any Bankruptcy Court (including, without limitation, the Bankruptcy Court) or other body, the amount, validity, perfection, or priority of the DIP Facility Obligations (and/or the accompanying security interests and liens, including, without limitation, the DIP Liens, in, to and against the Collateral and the DIP Super-Priority Claims) or of the Prior Bank Obligations (and/or the Pre-Petition Liens in, to and against the Pre-Petition Encumbered Assets, including, without limitation, as to the amount of any Adequate Protection Claim or the scope of any Adequate Protection Lien) or to otherwise assert and/or prosecute, by way of motion, adversary proceeding, or other action or proceeding before any court (including, without limitation, the Bankruptcy Court) or other body, any other cause of action or other claim of any nature or type whatsoever (whether under any provision of the Bankruptcy Code (including, without limitation, any provision of Chapter 5 of the Bankruptcy Code) or otherwise, including, without limitation, whether under contract or tort theory, against any of the Agent, the Bank, the Pre-Petition Agent, the Pre-Petition Lender, and/or BANA in any other capacity. Further, no proceeds of any borrowings under the DIP Credit Agreement and no Cash Collateral may be used (and the Carve-Out relating to the professionals retained by the Debtors or any such committee in no manner shall be available) to (a) prevent, hinder or otherwise delay the Pre-Petition Agent's, Pre-Petition Lender's, the Agent's, or the Bank's assertion, enforcement, or realization on the Collateral or the Pre-Petition

25

Encumbered Assets, as applicable, in accordance with the DIP Loan Documents, the Pre-Petition Loan Documents, or this Interim Financing Order; (b) seek to modify any of the rights granted to the Agent, the Bank or the Pre-Petition Secured Parties hereunder, under the DIP Loan Documents, or the Pre-Petition Loan Documents, in each of the foregoing cases without such parties' prior written consent; (c) pay any amount on account of any claims arising prior to the Filing Date unless such payments are (1) approved by an order of this Bankruptcy Court and (2) in accordance with the Approved Budget; (d) seek authorization, or support any other person or entity seeking authorization, to use any cash collateral without the consent of the Agent; or (e) obtain a lien senior to, or on a parity with, the liens of the Agent in any Collateral or any portion thereof, without the prior written consent of the Agent.

23. Events of Default.

(a) Upon the occurrence and continuance of any Event of Default as set forth in Section 12 of the DIP Credit Agreement, including, without limitation, the Debtors' violation of any provision of this Interim Financing Order or the Final Financing Order, and in addition to the right of the Bank to refuse to make further loans pursuant to the provisions of the DIP Credit Agreement, the automatic stay under section 362 of the Bankruptcy Code shall be deemed lifted, without further order of or application to the Bankruptcy Court, to permit the Agent to do one or more of the following: (a) terminate the Debtors' use of Cash Collateral and cease to make any loans or advances to the Debtors; (b) declare all DIP Facility Obligations to be immediately due and payable; (c) freeze any accounts maintained with the Bank; (d) terminate any unfunded commitments under the proposed DIP Facility; (d) set off and apply immediately any and all amounts in accounts maintained by any Debtor with any Agent or Bank against the DIP Facility Obligations, and otherwise enforce rights against the Collateral in the possession of any of the

Agent and/or the Bank for application towards the DIP Facility Obligations; and (e) take any other actions or exercise any other rights or remedies permitted under this Interim Financing Order, the other DIP Loan Documents, or applicable law to effect the repayment and satisfaction of the DIP Facility Obligations; provided, that the Agent or Bank shall provide two (2) business days written notice (by facsimile, telecopy, electronic mail, or otherwise) to the U.S. Trustee, counsel to the Debtors and counsel to the Committee prior to exercising any enforcement rights or remedies in respect of the Collateral (other than the rights described in clauses (a), (b) and (c) above (to the extent they might be deemed remedies in respect of the Collateral); provided further, that the Debtors shall have the right to seek continuation of the automatic stay during such two (2) business day period solely on the basis that no Event of Default has occurred.

(b)     No holder of a lien primed by this Interim Financing Order or granted by the Debtors as adequate protection shall be entitled to object on the basis of the existence of any such lien to the exercise by the Agent and the Bank of their respective rights and remedies under the DIP Loan Documents or under applicable law to effect satisfaction of the DIP Facility Obligations or to receive any amounts or remittances due hereunder or under the other DIP Loan Documents. The Agent and the Bank shall be entitled to apply the payments or proceeds of the Collateral in accordance with the provisions of this Interim Financing Order and the other DIP Loan Documents, and except to the extent specifically provided herein, the Agent and the Bank shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral or otherwise.

24.     Cash Collateral Events of Default. In the event that the DIP Facility is terminated and the DIP Facility Obligations have been finally paid in full in cash, each of those events that previously constituted a Event of Default under the DIP Credit Agreement shall thereafter

CHDB02 5264744.9 19-Jan-10 11:04

constitute a "Cash Collateral Event of Default." After the DIP Facility has been terminated and the DIP Facility Obligations have been finally paid in full in cash, and upon the occurrence and continuance of any of the foregoing Cash Collateral Events of Default, the automatic stay under section 362 of the Bankruptcy Code shall be deemed lifted, without further order of or application to the Bankruptcy Court, to permit the Pre-Petition Agent (including upon the direction of the Pre-Petition Lender under the Pre-Petition Credit Agreement) to terminate the Debtors' ability to use Cash Collateral and to then exercise the other remedies described in, and upon the same terms and conditions set forth, in Paragraph 23 hereof.

25.     Preservation of Rights.

(a)     Notwithstanding anything herein to the contrary, the entry of this Interim Financing Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (i) any of the rights of any of the Agent, the Bank, or the Pre-Petition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, any right of the Agent or the Bank to: (W) request modification of the automatic stay of section 362 of the Bankruptcy Code; (X) request dismissal of any Case, conversion of any Case to a case under Chapter 7 of the Bankruptcy Code, or appointment of a Chapter 11 trustee or examiner (including with expanded powers); (Y) be heard with respect to, object to, or assert any other rights with respect to, any aspect of the Sale Process; or (Z) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans, or (ii) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Agent, the Bank, the Pre-Petition Agent or the Pre-Petition Lender.

(b)     The DIP Facility Obligations and the Debtors' obligations with respect of the DIP Super-Priority Claims, and the claims and liens granted to or for the benefit of the Agent

and the Bank pursuant to this Interim Financing Order and the other DIP Loan Documents, are not subject to any setoff or reduction of any kind, including, without limitation, under Section 502(d) of the Bankruptcy Code, and shall not be discharged by the entry of an order: (i) confirming a Chapter 11 plan in any Case (and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, the Debtors hereby waive such discharge); or (ii) converting any Case to a case under Chapter 7 of the Bankruptcy Code. Under no circumstances shall any Chapter 11 plan in any Case be confirmed or become effective unless such plan provides that the DIP Facility Obligations shall be paid in full in cash and satisfied in the manner provided in the DIP Loan Documents on or before the effective date of such plan.

(c) Based upon the findings set forth in this Interim Financing Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the commitments to extend financing contemplated by this Interim Financing Order, in the event that any or all of the provisions of this Interim Financing Order or any other DIP Loan Documents, including the Final Financing Order, are hereafter modified, amended, or vacated by a subsequent order of this or any other Bankruptcy Court, no such modification, amendment or vacation shall affect the validity, enforceability, or priority of any lien or claim authorized or created hereby or thereby or any DIP Facility Obligations incurred hereunder or thereunder. Notwithstanding any such modification, amendment, or vacation, any DIP Facility Obligations incurred and any claim granted to the Agent and the Bank hereunder or under the other DIP Loan Documents, including the Final Financing Order, arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of this Interim Financing Order and the other DIP Loan Documents, including the Final Financing Order, and the Agent

29

and the Bank shall be entitled to all of the rights, remedies, privileges, and benefits, including the liens and priorities granted herein and therein, with respect to any such DIP Facility Obligations.

(d)     The validity, enforceability, priority, or amount of any of the claims and liens granted to or for the benefit of the Agent and the Bank under this Interim Financing Order or any other DIP Loan Documents with respect to the DIP Facility Obligations shall not be affected by any finding or order of this Bankruptcy Court or any other court regarding any Pre-Petition Secured Parties or Pre-Petition Liens, including, without limitation, any order of this Bankruptcy Court or any other court invalidating any Pre-Petition Obligation or Pre-Petition Lien.

(e)     To the extent that any DIP Facility Obligations remain unpaid, any amounts disgorged by the Pre-Petition Secured Parties in respect of any of the Prior Bank Obligations (whether such amounts were received by the Pre-Petition Secured Parties prior or subsequent to the Filing Date) shall upon such disgorgement be immediately delivered by the Debtors to the Agent to be applied to repay the DIP Facility Obligations in accordance with the terms of the DIP Loan Documents.

(f)     The rights and remedies of the Agent and the Bank specified herein are cumulative and not exclusive of any rights or remedies that the Agent and the Bank may have under the other DIP Loan Documents or otherwise. The failure or delay by the (i) Agent and the Bank to seek relief or otherwise exercise their rights and remedies under this Order or any other DIP Loan Documents or (ii) or the Pre-Petition Secured Parties to exercise its rights and remedies under this Interim Financing Order shall not constitute a waiver of any of the rights of the Agent, the Bank, the Pre-Petition Agent or Pre-Petition Lender hereunder, thereunder, or otherwise, and any single or partial exercise of such rights and remedies against any party or

30

Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other party and/or the Collateral.

(g) This Interim Financing Order shall not prejudice or limit the Pre-Petition Lender's right to request or seek other or additional protection with respect to the Pre-Petition Encumbered Assets. Other than as it may pertain to the terms and conditions of the DIP Credit Agreement, the Pre-Petition Agent and the Pre-Petition Lender shall be entitled to exercise all of their other rights under the Bankruptcy Code, including, without limitation, the right to seek and obtain relief from the automatic stay or the provision of additional adequate protection based on an erosion of the value of its collateral and to oppose the confirmation of any plan of reorganization proposed by any Debtor or any other party. In addition, the protections granted in favor of the Pre-Petition Lender under this Interim Financing Order or otherwise cannot be altered without the prior consent of the Pre-Petition Lender (by required percentage vote under the Pre-Petition Credit Agreement).

(h) Without limiting the other provisions of this Order, if an order dismissing any Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that: (i) the claims and liens (and other protections) granted pursuant to this Interim Financing Order to or for the benefit of the Agent and the Bank, and/or the Pre-Petition Agent and the Pre-Petition Lender, shall continue in full force and effect and shall maintain their priorities as provided in this Interim Financing Order; (ii) that prior to dismissal, the Debtors shall deliver to the Agent and record, at the Debtors' cost, financing statements, mortgages, and other documentation evidencing perfected liens in the Collateral; and (iii) this Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

31

26.     [Intentionally Omitted].

27.     <u>Insurance Policies</u>.  Upon entry of this Interim Financing Order, the Agent shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtors which in any way relates to the Collateral.  The Debtors are authorized and directed to take any action necessary to have the Agent added as an additional insured and loss payee on each such insurance policy.

28.     <u>Conclusive Evidence of DIP Facility Obligations</u>.  The terms, conditions and covenants of the DIP Credit Agreement and the other DIP Facility Documents shall be sufficient and conclusive evidence of the borrowing and financing arrangements among the Debtors and the Bank for all purposes, including, without limitation, the Debtor's obligation to pay all principal, interest, fees (including, without limitation, unused line fees, agency fees, servicing fees, letter of credit fees, closing fees, syndication fees, early termination fees and appraisal fees), and other costs and expenses (including, without limitation, all reasonable fees and expenses of consultants, advisors and attorneys), as more fully set forth and to the extent provided in the DIP Credit Agreement and the other DIP Loan Documents.

29.     <u>Maintenance of Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral, except for sales expressly permitted by the DIP Credit Agreement, sales of the Debtor's inventory in the ordinary course of their businesses, or except as otherwise provided for in the DIP Loan Documents and/or this Interim Financing Order.  Nothing contained in this paragraph shall limit or impair the right of any lessor or other contract party of any Debtor to request that the Bankruptcy Court compel the Debtors to assume or reject any lease or license of real or personal property.

32

30.    Collateral Rights.   Until all of the DIP Facility Obligations shall have been indefeasibly paid and satisfied in full in immediately available funds and without further order of the Bankruptcy Court:

(a)    In the event that any party who holds a lien or security interest in any of the Collateral that is junior and/or subordinate to the liens and claims of the Agent and the Bank in such Collateral receives or is paid proceeds of the Collateral prior to the indefeasible payment and satisfaction in full of all DIP Facility Obligations, such junior or subordinate lienholder shall be deemed to have received, and shall hold, such Collateral proceeds in trust for the Agent and the Bank and shall immediately turnover to the Agent such proceeds for application to the DIP Facility Obligations in accordance with the DIP Facility Documents and/or this Interim Financing Order;

(b)    In addition to the rights set forth in Paragraph 19 and in lieu of requiring the Debtors to obtain any account control agreements with respect to their accounts on or prior to the Closing Date, the Pre-Petition Agent is hereby ordered to take direction from the Agent with respect to the Debtors' deposit accounts, including notifying any bank subject to an account control agreement to exercise the rights and remedies of a secured party thereunder, such that the Agent shall have "control" over such accounts as set forth in the applicable Uniform Commercial Code until the DIP Facility Obligations are finally paid in full in cash. In addition, the Pre-Petition Agent is hereby ordered to take direction from the Agent with respect to any landlord lien waivers, collateral access agreements or any similar instruments such that the Agent shall have all of the rights and remedies of a secured party thereunder.

(c)    Upon the acceleration of the DIP Facility Obligations following an Event of Default, and subject to the Agent providing the notice required by this Interim Financing Order, in connection with a liquidation of any of the Collateral, the Agent and the Bank (or any of their

33

employees, agents, consultants, contractors or other professionals) shall have the right, at the cost and expense of the Debtors to be added to the DIP Facility Obligations, to: (i) enter upon, occupy and use any personal property, fixtures and equipment owned or leased by the Debtors and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses. If the Agent or the Bank exercise any remedies provided for in this paragraph, the Agent and the Bank will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that the Agent or any Bank actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that the Agent or any Bank actually occupies or uses such assets or properties); and

      (d)    Upon the acceleration of the DIP Facility Obligations following an Event of Default, and subject to the Agent providing the notice required by this Interim Financing Order, as well as three (3) business days notice to any Debtor's real property lessor of the Agent's or the Bank's intention to enter onto or into such lessor's leased premises to remove or otherwise dispose of any Collateral located at such leased premises in accordance with the terms of this paragraph, the Agent and the Bank shall have the right, following the expiration of such three (3) business days notice period described in this paragraph, to enter onto or into such leased premises for the purpose of removing the Collateral from the leased premises or selling such Collateral at the leased premises, in each case subject to the applicable terms of such Debtor's lease arrangements with such lessor to the extent enforceable or effective under the Bankruptcy Code and subject to the rights of the Agent and the Bank provided for herein. Subject to the following sentence, the Debtors shall remain obligated to perform any obligation and to pay any rent and additional rent due under the

34

terms of their leases at all times, including during the period commencing upon the Agent and the Bank obtaining the right to enter the Debtors' leased premises in accordance with this paragraph. Nothing herein shall require the Agent or the Bank to assume any lease or cure any defaults as a condition to the rights afforded in this paragraph.

31.    Restrictions on Additional Use of Cash Collateral. Additional Financing. All post-petition advances and other financial accommodations under the DIP Credit Agreement and the other DIP Loan Documents are made in reliance on this Interim Financing Order and in the event that an order is entered at any time in the Debtors' Chapter 11 cases or in any subsequently converted case under Chapter 7 of the Bankruptcy Code (other than the Final Order) which (a) authorizes the use of cash collateral of the Debtors in which the Bank has an interest or the sale, lease, or other disposition of property of the Debtors' estates in which the Agent and the Bank has a lien or security interest, except as expressly permitted hereunder or in the DIP Loan Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the Agent and the Bank holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the Agent and the Bank herein; then, in each instance described in clauses (a) and (b) of this paragraph, (i) the Agent and the Bank, as is required by the DIP Credit Agreement, shall first have given their express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by the Agent or the Bank, or (ii) such other order shall require that all DIP Facility Obligations first shall be indefeasibly paid in full in cash in immediately available funds. The liens and security interests granted to or for the benefit of the Agent and the Bank hereunder and the rights of the Agent or the Bank pursuant to this Interim Financing Order

35

and the DIP Facility Documents with respect to the DIP Facility Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtors.

32.     Proofs of Claim. The Agent, Bank, Pre-Petition Agent and Pre-Petition Lender shall not be required to file proofs of claim in any of these Cases or any Successor Case for any claim allowed herein. Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in these Cases or any Successor Case shall not apply to the Agent, Bank, Pre-Petition Agent and/or the Pre-Petition Lender.

33.     No Obligation to Extend Credit. The Agent and the Bank shall not have any obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Documents and this Interim Financing Order have been satisfied in full or waived by the Bank in accordance with the DIP Loan Documents.

34.     Limitation of Liability. Nothing in this Interim Financing Order or the DIP Facility Documents shall in any way be construed or interpreted to impose, or allow the imposition upon the Agent or the Bank of any liability for any claims arising from the pre-petition or post-petition activities by the Debtors in the operation of its business or in connection with its restructuring efforts.

35.     Termination of Postpetition Credit and Cash Collateral Usage. Notwithstanding anything in this Interim Financing Order to the contrary, the Bank's obligation to make the DIP Facility Commitments in accordance with the DIP Facility Documents and the Agent's consent to the use of Cash Collateral shall automatically terminate without any further action by the Bankruptcy Court or the Agent or Bank, upon the earliest to occur of: (i) six (6) months after the commencement of the Chapter 11 Cases, (ii) the consummation of a sale of

36

substantially all of the assets of the Debtors, (iii) the effective date of a plan of reorganization in respect of a Debtor in the Chapter 11 Cases, (iv) the date the DIP Facility becomes due and payable, whether at stated maturity, upon an Event of Default or otherwise, and (v) this Bankruptcy Court shall fail to have entered the Final Financing Order (as such term is defined in the DIP Credit Agreement) on or before February 8, 2010 (the "Termination Date").

36.     Good Faith.     The terms of the financing arrangements among the Debtors, the Agent and the Bank have been negotiated in good faith and at arms' length among the Debtors, the Agent and the Bank and any loans, advances or other financial accommodations which are made or caused to be made to the Debtors by the Agent and the Bank pursuant to the DIP Loan Documents are deemed to have been made and provided in good faith, as the term "good faith" is used in section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Financing Order or the DIP Facility Documents or any provisions are hereafter modified, vacated, amended, or stayed by subsequent order of this Bankruptcy Court or any other court without the consent of the Agent and the Bank.

37.     Binding Effect; Successors and Assigns.     This Interim Financing Order is hereby deemed effective immediately pursuant to Federal Bankruptcy Rules of Procedure 6004(h). The provisions of this Interim Financing Order shall be binding upon and inure to the benefit of the Agent, the Bank, the Pre-Petition Agent, the Pre-Petition Lender, and the Debtors and their respective successors and assigns, including any Chapter 7 trustee or other trustee or fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors in a Successor Case.

37

38.     Deadline for Entry of Final Financing Order.  Pending the Final Hearing, the Debtors' authorization to borrow under the DIP Credit Agreement subject to and on the terms and conditions of this Interim Financing Order shall terminate without any further order of this Bankruptcy Court or action of any party at 5:00 p.m. Eastern Daylight time on February 8, 2010 unless the Debtors' right to borrow under the DIP Credit Agreement as provided herein has been previously terminated pursuant to the provisions of this Interim Financing Order.  The termination of the Debtors' authorization to borrow under the DIP Credit Agreement shall not result in the termination of any of the other provisions of this Interim Financing Order.  If the a Final Financing Order (the "Final Financing Order") approving the DIP Loan Documents is not entered within twenty (20) days of the Filing Date, all such extensions of credit together with accrued interest shall be immediately due and payable.

39.     Findings of Fact and Conclusions of Law.  This Interim Financing Order shall constitute findings of fact and conclusions of law.

40.     Notice.  The Debtors shall, on or before [ 1/22 ], 2010, serve by United States mail, first class postage prepaid, copies of the Motion, this Order, and a notice of the Final DIP Hearing (the "Final Hearing Notice") to be held on [ 2/4 ], 2010, at [ 2:00 p ].m. to consider entry of the Final Financing Order on the Interim Notice Parties.  Copies of the Motion, this Interim Financing Order and the Final Hearing Notice also shall be served upon all persons requesting service of papers pursuant to Bankruptcy Rule 2002 by United States mail, first class postage prepaid, within the later of one business day following the receipt of such request ~~and~~ [~~          ~~], 2010.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the Final Financing Order shall file written objections with the Bankruptcy Court no later than [ 2/4:00 ].m. on [ 2/1 ], 2010, which objections shall be served so that the same are

38

received on or before such date and time by: (a) Frost Brown Todd LLC, 2200 PNC Center, 201 East Fifth Street, Cincinnati, Ohio 45202: Attention Ronald E. Gold, proposed counsel to the Debtors; (b) the Office of the United States Trustee, Attn: Thomas Patrick Tinker, Esq., 844 King Street, Suite 2207,Lockbox 35, Wilmington, DE 19801; and (c) Mayer Brown LLP, Attn: Thomas S. Kiriakos, Esq., 71 S. Wacker Drive, Chicago, IL 60606, counsel to the Agent. The Final Financing Order requested to be entered at the conclusion of such hearing is contemplated to contain, and the Agent, the Bank, and the Pre-Petition Secured Parties have expressly reserved their right to refuse to advance any further funds under the DIP Facility or consent to the priming the Pre-Petition Liens, respectively, unless the Final Financing Order does contain provisions in addition to those set forth herein, including, without limitation, relating to (a) the inclusion of Bankruptcy Actions as part of the Collateral (at least with respect to the $2,500,000 in incremental funding), (b) the use of the proceeds of the DIP Facility to make partial payment to the Pre-Petition Secured Parties in respect of Prior Bank Obligations in the amount of $12,900,000, including factual findings as to the minimum fair market value of the Pre-Petition Encumbered Assets as of the Filing Date similar to the acknowledgement of the Debtors set forth in clause (vii) of Finding D above, (c) the required distribution and application of the net proceeds of any section 363 sale of substantially all of the Debtors' assets as set forth in the DIP Loan Documents and as summarized in Appendix I hereto, (d) the release of claims by the Debtors and a request that this Bankruptcy Court set a deadline by which the Debtors, any official committee, individual creditor, or other party in interest must bring a challenge to any claims or liens of the Pre-Petition Agent or of the Pre-Petition Lender or be barred from subsequently doing so, in each instance, and substantially in the form, as set forth in Appendix I

39

hereto, and (d) a prohibition against surcharge claims under Section 506(c) of the Bankruptcy Code, substantially in the form set forth in Appendix I hereto.

41.    Conflict.  Any conflict between the provisions of the DIP Loan Documents and this Interim Financing Order shall be governed by the provisions of this Interim Financing Order.

42.    Scope of Order.  The liens and priorities granted under this Interim Financing Order shall apply to all use by the Debtors of the Pre-Petition Encumbered Assets and all advances of the DIP Facility on or after the Filing Date.

43.    Reservation of Rights.  Notwithstanding anything to the contrary set forth herein, all rights of any statutory committee of unsecured creditors that may be subsequently appointed in these chapter 11 Cases to object to the entry of the proposed Final Financing Order , including with respect to any of the findings of fact or conclusions of law sought to be set forth therein, are hereby reserved.

Dated: Wilmington, Delaware
        January 21, 2010

_____
Kevin Gross, United States Bankruptcy Judge

CHDB02 5264744.9 19-Jan-10 11:04

Cosmolab Inc.
Cash Flow
Consolidated

**Week Ending - Post-Petition**

| | 1 Proj | 2 Proj | 3 Proj | 4 Proj | 5 Proj | 6 Proj | 7 Proj | 8 Proj | 9 Proj | 10 Proj | 11 Proj | 12 Proj | 13 Proj | 13-week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12/24/2015 | 12/31/2015 | 1/7/2016 | 1/14/2016 | 1/21/2016 | 1/28/2016 | 2/4/2016 | 2/11/2016 | 2/18/2016 | 2/25/2016 | 3/3/2016 | 3/10/2016 | 3/17/2016 | |
| **Net Revenue** | 675 | 625 | 647 | 647 | 647 | 935 | 935 | 553 | 828 | 828 | 553 | 600 | 768 | 9,135 |
| **Cash Receipts:** | | | | | | | | | | | | | | |
| Accounts Receivable | 736 | 279 | 550 | 550 | 550 | 550 | 935 | 828 | 828 | 828 | 808 | 808 | 989 | 9,291 |
| A/R Collection Agency / Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Vendor Deposits / Sale of Division | - | 350 | - | - | - | - | - | - | - | - | - | - | - | 350 |
| Other Asset Sales | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Cash Receipts | 736 | 629 | 550 | 550 | 550 | 550 | 935 | 828 | 828 | 828 | 808 | 808 | 989 | 9,641 |
| **OPERATING DISBURSEMENTS** | | | | | | | | | | | | | | |
| **Payroll & Benefits** | | | | | | | | | | | | | | |
| Payroll & Taxes [1 week lag] | (140) | (290) | (290) | (290) | (260) | (267) | (518) | (345) | (214) | (214) | (259) | (214) | (307) | (3,153) |
| Health Insurance | | (438) | (380) | (38) | (35) | (35) | (38) | (36) | (36) | (36) | (36) | (36) | (307) | (385) |
| **Non-Payroll Operating Expenses** | | | | | | | | | | | | | | |
| Raw Materials | (341) | (438) | (398) | (238) | (538) | (499) | (445) | (359) | (327) | (289) | (621) | (318) | | (4,599) |
| Essential Vendor Payments | (100) | (301) | (300) | (190) | (167) | | | | | | | | | (1,000) |
| Repairs & Maintenance | (13) | (6) | (6) | (6) | (6) | (6) | (6) | (5) | (6) | (6) | | | | (98) |
| Building Rents | | (13) | | (12) | | | | (1) | | | | | | (80) |
| Real Estate Taxes | | | | | (19) | | | | (19) | | | | | (40) |
| Telephone | | | | | (10) | | | | | | | (10) | | (30) |
| Utilities (including Deposit) | | (25) | (26) | (10) | | | | (60) | (90) | | | | | (170) |
| Credit Card T&E | | | | | | | | | (70) | | | | | (30) |
| Janitorial | (2) | (2) | (2) | (2) | (2) | | (2) | | (2) | (2) | (2) | | (10) | (30) |
| Trash | (46) | | | | | | | | | (2) | | | | (28) |
| Operating Lease Payments | | | (10) | | | | | | | | | | | (28) |
| Insurance Premiums | | | | | | | (180) | | | | (10) | | | (130) |
| Other | (30) | (30) | (30) | (30) | (30) | (30) | (31) | (35) | (15) | (19) | (19) | (19) | (15) | (305) |
| Total Operating Disbursements | (634) | (1,113) | (1,031) | (749) | (898) | (958) | (641) | (746) | (633) | (641) | (622) | (700) | (719) | (10,022) |
| **Bankruptcy Expenses** | | | | | | | | | | | | | | |
| Morris/Anderson [1] | (41) | (49) | (49) | (49) | (49) | (49) | (48) | (36) | (36) | (36) | (36) | (39) | (35) | (549) |
| Morris/Anderson Retainer | (50) | (40) | (50) | (50) | (50) | | (40) | (45) | (49) | (49) | | | (45) | (828) |
| Frost Brown Todd | (20) | (5) | (43) | (46) | (51) | (43) | (51) | (10) | (5) | (10) | | | (8) | (100) |
| Frost Brown Todd Retainer | | (75) | | (26) | | | | | (26) | (26) | | | (26) | (125) |
| Debtor Local Counsel | | (40) | | | | | | | (10) | | | | | (50) |
| Creditor's Committee | | | (200) | | | | | | (10) | | (10) | | | (40) |
| Audit & Tax Accounting | | | (19) | | | | | | (16) | | (16) | | | (43) |
| 401K Administrator and Counsel | | | | | | | | | (16) | | | | | (43) |
| Claims & Noticing Agent - Fees | | | | | | (20) | | | | | | | | (20) |
| US Trustee | | | | | | | | | | | | | | |
| **Bank Debt:** | | | | | | | | | | | | | | |
| Interest Paid | (26) | (25) | (132) | | | | (143) | | | | | (142) | (36) | (467) |
| Secured Lender Counsel (incl. local counsel) | (25) | | (50) | (50) | | (26) | (50) | (50) | (35) | | | (52) | | (200) |
| Total Disbursements | (776) | (1,277) | (1,223) | (932) | (1,078) | (1,076) | (886) | (887) | (850) | (751) | (711) | (1,054) | (805) | (12,286) |
| **Cash Surplus / (Deficit)** | (33) | (645) | (723) | (382) | (528) | (525) | (81) | (16) | (6) | 47 | (94) | (55) | 183 | (2,527) |
| Beginning Cash Balance | 241 | 207 | (441) | (1,193) | (1,556) | (1,900) | (2,339) | (2,414) | (2,429) | (2,420) | (2,376) | (2,440) | (2,459) | 241 |
| Net Cash Flow | (33) | (645) | (752) | (382) | (528) | (530) | (96) | (6) | (4) | 47 | (64) | (55) | 103 | (2,527) |
| Revolver Borrowings / (Paybacks) | | | | | | | | | | | | | | |
| Float | | | | | | | | | | | | | | |
| Adjustment | | | | | | | | | | | | | | |
| **Ending Cash Balance / (Deficit)** | 207 | (441) | (1,193) | (1,556) | (1,900) | (2,339) | (2,388) | (2,441) | (2,429) | (2,376) | (2,440) | (2,459) | (2,364) | (2,385) |

Note:
[1] Per terms of Morris/Anderson Engagement Letter, success fee to be earned upon sale of Company or Chapter 11 plan, anticipated to be $450K at sale.

Privileged and Confidential

## Appendix I

### Certain Additional Provisions Sought to be
### Included in Final Financing Order (For Notice Purposes)

**A. To be inserted at the end of Paragraph 6, either in this form or by reference to pertinent provision in DIP Credit Agreement, or a combination thereof:**

Mandatory Permanent Prepayments and Cash Collateralization | Mandatory prepayments (and concomitant Commitment reductions) shall also be required in connection with asset sales by the Debtors under the following circumstances. DIP Facility

DIP Facility | All Net Asset Sale Proceeds (as such term is defined below) realized from a Section 363 Sale (as such term is defined below) shall be paid to the Agent until the DIP Facility Obligations are paid full in cash, with a concomitant permanent reduction in the amount of the Commitment. Thereafter, any remaining Net Asset Sale Proceeds shall be distributed to the Pre-Petition Agent for distribution and application to and by the Pre-Petition Agent and the Pre-Petition Lenders pursuant to the provisions of the Existing Credit Agreement. **"Net Asset Sale Proceeds"** shall specifically exclude, without duplication, (i) professional or management fees and expenses attributable to the pertinent sale of any professional whose retention for such purpose has been approved pursuant to an Order entered by the Bankruptcy Court, including allowed and previously unpaid attorneys' fees and expenses (but in all instances subject to the Carve-Out Amount) and including the success fee owing to Morris Anderson (assuming the retention of such firms and such fees have been approved by the Bankruptcy Court and fully earned), (ii) other ordinary and customary sale and transaction costs, and, in the event that the Bank elect to then terminate the DIP Facility, (iii) an amount equal to the sum of (A) the as-yet unfunded amount under the Operating Budgets for the period through the date of the consummation of such sale, and (B) $175,000, such sum shall then be held as Cash Collateral. Absent the occurrence of a DIP Event of Default, Permitted Asset Sales shall not trigger the type of application described

above, but instead, the proceeds of Permitted Asset Sales shall be applied against the pre-petition indebtedness under the Existing Credit Agreement. For these purposes, **"Permitted Asset Sales"** shall consist of: (i) sales of inventory in the ordinary course of business and (ii) sales of other assets (other than pursuant to a Section 363 Sale) where the consideration received from all of such sales does not exceed $50,000 in the aggregate (or such greater aggregate amount, if any, agreed-to pursuant to the provisions of the DIP Credit Agreement (as described herein)), but, as indicated, a Section 363 Sale is not a Permitted Asset Sale for this purpose, but instead the net proceeds received as a result of the successful culmination of the Section 363 Sale Process shall be "Net Asset Sale Proceeds" for all purposes under this Summary of Terms and, without limiting the generality of the foregoing, shall be distributed as described herein

Other:

After payment in full in cash of the DIP Facility Obligations, all remaining Net Asset Sale Proceeds (other than proceeds of any Permitted Asset Sales that is not a Section 363 Sale) shall be paid to the Pre-Petition Agent for provisional distribution to and application by the Pre-Petition Agent and the Pre-Petition Lenders per the terms of the Existing Credit Agreement.

B. **[To be inserted at the beginning of paragraph 21:]**  The Debtors, on behalf of themselves and their bankruptcy estates, waive any and all claims, rights, and powers under 11 U.S.C. § 506(c) against the Collateral and Pre-Petition Encumbered Assets (including as the result of the Adequate Protection Lien of the Pre-Petition Secured Parties), and any other properties or assets of the Debtors subject in any manner whatsoever to the liens of the Agent, the Bank, and the Pre-Petition Secured Parties which claims, rights or powers arise during or are related to the period from and after the Filing Date through repayment in full of the Prior Bank Obligations and DIP Facility Obligations. The foregoing waiver shall be binding upon any Chapter 7 trustee, Chapter 11 trustee, or other similar Bankruptcy Court-appointed representative of the estates, but only with respect to administrative expenses (including professional fees and

CHDB02 5264744.9 19-Jan-10 11:04

costs) incurred during the course of the Chapter 11 case (x) prior to appointment of such Chapter 7 trustee, Chapter 11 trustee, or other similar estates representative and (y) prior to the termination of any right of the Debtors to use Cash Collateral. Moreover, **[note: the "T" in the next word ("The") to become lower case]**

C.     **[To be inserted as the text of Paragraph 10:]**

Release of Claims.  Subject to the reservation of rights set forth in Paragraph 26, each and every Debtor, on behalf of themselves and their bankruptcy estates, shall be deemed to have waived, discharged, and released the Pre-Petition Secured Parties, together with their respective affiliates, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, the "Pre-Petition Releasees") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment or other offset rights against any and all of the Pre-Petition Releasees, whether arising at law or equity, including, without limitation (i) any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or any other similar provisions of applicable state or federal law, and (ii) any right or basis to challenge or object to the amount, validity, priority, or non-avoidability of the Pre-Petition Liens securing the Prior Bank Obligations.

D.     **[To be inserted as the text of Paragraph 26:]**

Reservation of Certain Third Party Rights and Bar of Challenges and Claims.  Subject to the reservation of rights set forth in this Paragraph, the Debtors' Release of Claims in Paragraph 10 shall be binding upon the Debtors in all circumstances and shall be binding upon each other party in interest, including any Committee, unless (a) such party in interest obtains the requisite standing to commence, and commences, by the earlier of (x) 60 days following the appointment

of the first Committee, or (y) if no Committee is appointed, 75 days following the entry of the Interim Financing Order, or (z) the date upon which an order is entered confirming a plan of reorganization for the Debtors (the "Confirmation Date") (such time period established by the earlier of clauses (x) and (y) shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "Challenge Period Termination Date"), (i) a contested matter or adversary proceeding challenging or otherwise objecting to the admissions, stipulations, findings or releases included in the Debtors' Stipulations, or (ii) a contested matter or adversary proceeding against the Pre-Petition Secured Parties in connection with or related to the Prior Bank Obligations (including, without limitation, the roll-up of such Prior Bank Obligations into the DIP Facility Obligations), or the actions or inactions of the Pre-Petition Secured Parties arising out of or related to the Prior Bank Obligations or otherwise, including, without limitation, any claim against the Pre-Petition Secured Parties in the nature of a "lender liability" causes of action, setoff, counterclaim or defense to the Prior Bank Obligations (including but not limited to those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Pre-Petition Secured Parties) (the objections, challenges, actions and claims referenced in clauses (a)(i) and (ii), collectively, the "Claims and Defenses"), and (b) there is a final order in favor of such party in interest sustaining any such Claims and Defenses in any such timely filed contested matter or adversary proceeding prior to the Confirmation Date; provided that as to the Debtors, for themselves and not their estates, all such Claims and Defenses are irrevocably waived and relinquished as of the Filing Date. If no Claims and Defenses have been timely asserted in any such adversary proceeding or contested matter, then, upon the Challenge Period Termination

Date, and for all purposes in these Cases and any Successor Case, (i) all payments made to the Pre-Petition Secured Parties pursuant to this Order or otherwise shall not be subject to counterclaim, set-off, subordination, recharacterization, defense or avoidance, (ii) any and all such Claims and Defenses by any party in interest shall be deemed to be forever released, waived and barred, (iii) the Prior Bank Obligations shall be deemed to be an allowed secured claim within the meaning of section 506 of the Bankruptcy Code, and (iv) the Release of Claims contained in Paragraph 10 herein shall be binding on all parties in interest, including any Committee. Notwithstanding the foregoing, to the extent any Claims and Defenses are timely asserted in any such adversary proceeding or contested matter, the Debtors' Release of Claims contained in Paragraph 10 herein shall nonetheless remain binding and preclusive on any Committee and on any other party in interest from and after the Challenge Period Termination Date, except to the extent expressly challenged in such adversary proceeding or contested matter. The Challenge Period in respect of the Pre-Petition Credit Agreement may be extended by written agreement of the Pre-Petition Agent in its sole discretion. Nothing in this Interim Financing Order vests or confers on any person or entity, including any Committee, standing or authority to pursue any cause of action belonging to any or all of the Debtors or their estates, including, without limitation, any Claim and Defense or other claim against the Pre-Petition Secured Parties or the DIP Secured Parties.

45