# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| | ) | **Case No. 10-10142 (KG)** |
| **SPECIALTY PACKAGING HOLDINGS, INC., *et al.*,**[1] | ) | **(Jointly Administered)** |
| | ) | |
| **Debtors.** | ) | |
| | ) | **Objections Due: February 11, 2010 at 4:00 p.m.** |
| | ) | **Hearing Date: February 18, 2010 at 12:00 p.m.** |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF (A) MORRIS-ANDERSON & ASSOCIATES, LTD. TO PERFORM CRISIS MANAGEMENT SERVICES FOR THE DEBTORS, (B) MICHAEL J. MUSSO AS CHIEF RESTRUCTURING OFFICER AND INTERIM CHIEF EXECUTIVE OFFICER, AND (C) STEVEN AGRAN AS ASSISTANT CHIEF RESTRUCTURING OFFICER PURSUANT TO BANKRUPTCY CODE §§ 105(a) AND 363 *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby move this Court (the "**Motion**") for entry of an order (the "**Order**"), in substantially the form attached hereto as **Exhibit A**, pursuant to 11 U.S.C. §§ 105(a) and 363(b), authorizing the retention and employment of Morris-Anderson & Associates, Ltd. ("**MA&A**") as crisis managers for the Debtors, including providing Michael J. Musso ("**Mr. Musso**") as Chief Restructuring Officer ("**CRO**") and Interim Chief Executive Officer ("**Interim CEO**") and Steven Agran ("**Mr. Agran**") as Assistant Chief Restructuring Officer ("**Asst. CRO**"), effective *nunc pro tunc* as of the Petition Date (as defined below). In support of this Motion, the Debtors respectfully state:

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Specialty Packaging Holdings, Inc. (7942), The Specialty Packaging Group, Inc. (6668), Cosmetics Specialties, Inc. (0826), Cosmolab, Inc. (1367), Cosmetics Specialties East, LLC (0313), and Cosmolab New York, Inc. (2222). The primary mailing address for the Debtors is: 1100 Garrett Parkway, Lewisburg, TN 37091

## JURISDICTION

1.     This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). This Court can exercise subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory basis for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "**Bankruptcy Code**").

## BACKGROUND

3.     On January 20, 2010 (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or statutory creditors' committee has been appointed in these Chapter 11 cases.

4.     The Debtors, collectively, are an industry-leading global developer and manufacturer of color cosmetics. The Debtors' primary manufacturing facility is located in Lewisburg, Tennessee. For a more detailed description of the Debtors' business operations and the events leading up to the commencement of these Chapter 11 cases, see the *Declaration of Michael J. Musso in Support of Chapter 11 Petitions and First Day Motions and Applications* (the "**Musso Declaration**").

## RELIEF REQUESTED

5.     By this Motion, the Debtors request entry of an Order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, approving the retention of MA&A to provide crisis

2

management services to the Debtors during these Chapter 11 cases *nunc pro tunc* to the Petition Date, including MA&A's providing a CRO and Interim CEO, Mr. Musso, an Asst. CRO, Mr. Agran and additional staff as needed, to the Debtors during these Chapter 11 cases, as described herein, in the MA&A Work/Project Authorization and Agreement for Consulting Services (collectively, the "**Engagement Agreement**"), a copy of which are attached hereto and incorporated by reference as **Exhibit B**, and the *Declaration of Michael J. Musso in Support of Motion of Debtors for an Order Authorizing the Employment and Retention of (A) Morris-Anderson & Associates, Ltd. to Perform Crisis Management Services for the Debtors; (B) Michael J. Musso as Chief Restructuring Officer and Interim Chief Executive Officer; and (C) Steven Agran as Assistant Chief Restructuring Officer Pursuant to Bankruptcy Code § 363 Nunc Pro Tunc to the Petition Date* (the "**Musso Retention Declaration**"), which is attached hereto and incorporated by reference as **Exhibit C**. The Debtors request that MA&A be retained to perform the services described in this Motion on the terms set forth herein.

## BASIS FOR RELIEF REQUESTED

6.     Mr. Musso, as CRO and Interim CEO, and Mr. Agran, as Asst. CRO, as well as other MA&A personnel made available to provide such management services as may be requested by the Debtors' respective Board of Directors, will be responsible for day-to-day executive management and operational issues of the Debtors.

7.     To address and handle the above responsibilities on behalf of the Debtors, Mr. Musso and Mr. Agran will be assigned certain professionals from MA&A to assist in providing crisis management services pursuant to the terms of the Engagement Agreement.

3

## Qualifications of MA&A, Mr. Musso, and Mr. Agran

8.     The Debtors selected MA&A based on its longstanding reputation in providing crisis management services in complex financial restructurings, including bankruptcy reorganizations, and its degree of success in a wide range of industries.

9.     The Debtors selected Mr. Musso and Mr. Agran based on their extensive experience in providing crisis management services and their excellent reputation in the industry. The compensation arrangement reflected in the Engagement Agreement is consistent with, and typical of, arrangements entered into by Mr. Musso and Mr. Agran and other crisis management consultant experts with respect to rendering similar services for clients such as the Debtors.

10.     The continued employment of Mr. Musso, Mr. Agran and MA&A is critical to the Debtors based on their intimate knowledge of the Debtors' operations and prospects. It would not be possible or practical for the Debtors to hire another crisis management firm to perform these services and replace MA&A at this time.

## Scope of Retention and Employment of MA&A, Mr. Musso, and Mr. Agran

11.     Subject to this Court's approval of this Motion, the Debtors have requested that MA&A, Mr. Musso, and Mr. Agran provide crisis management services (the "**Crisis Management Services**"), which shall include performance of the following services for the Debtors:

    (a)     Reviewing and directing the development of the Debtors' financial budgets and related borrowing base reporting and projections, revenue and cash flow projections and all other financial and accounting information, records and systems related to the Debtors' operations;

    (b)     Directing the Debtors' operations, including the efforts of other professionals in connection with the Debtors' financial restructuring, including all sale, refinancing, or liquidation activities;

    (c)     Directing negotiations with, and reporting to, the Debtors' significant creditors, including without limitation, trade creditors and senior lenders

4

(including any lenders under any debtor-in-possession credit arrangement and any Creditors Committee);

(d)    Managing Debtors' sale of business process;

(e)    Assisting the Debtors in complying with the requirements of the U.S. Bankruptcy Code;

(f)    Assisting in the development and implementation of a Plan of Reorganization, if appropriate;

(g)    Directing all cash management matters throughout the pendency of the bankruptcy process;

(h)    Maintaining full responsibility for all of the Debtor's operations, including, but not limited to day to day management of all aspects of the Debtor and its personnel;

(i)    Reporting to the Debtors' Board of Directors;

(j)    Responding to all inquiries of the Bankruptcy Court, the U.S. Trustee's Office and the Debtors' creditor constituencies during the course of the bankruptcy process, including compliance with all aspects of any debtor-in-possession operations; and

(k)    Other such functions as requested by the Debtors or their counsel to assist the Debtors in these Chapter 11 cases.

12.    Except as described herein and in the Engagement Agreement, MA&A will not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claim administrator, or investor/acquirer) in conjunction with these Chapter 11 cases.

13.    The Debtors have selected MA&A, Mr. Musso, and Mr. Agran to perform the Crisis Management Services. The Debtors' employment of MA&A, Mr. Musso, and Mr. Agran pursuant to the Engagement Agreement are necessary in this case. The Debtors need sophisticated executives who will guide the Debtors through the going-concern sale of the Debtors' operations and a successful conclusion of these Chapter 11 cases. Prior to the Petition Date, the Debtors explored obtaining crisis management services after evaluating their financial and business circumstances. Based on that evaluation, the Debtors decided to hire a crisis management services firm, a CRO, and Interim CEO, and an Asst. CRO to guide them through

bankruptcy. The Debtors selected MA&A, Mr. Musso, and Mr. Agran because of their vast experience in providing crisis management services to financially troubled organizations.

14. The Debtors believe that the Crisis Management Services provided by MA&A and the appointment of Mr. Musso as CRO and Interim CEO and Mr. Agran as Asst. CRO are necessary to enable the Debtors to maximize the value of their estates and enhance their abilities to successfully administer these Chapter 11 cases, and are therefore in the best interest of the Debtors' estates. MA&A, Mr. Musso and Mr. Agran, in accordance with the Engagement Agreement, have indicated their willingness to act on behalf of the Debtors with respect to the crisis management services and to serving as CRO, Interim CEO, and Asst. CRO in these Chapter 11 cases.

15. Mr. Musso's time will be billed weekly at a capped fixed rate of $19,200 ($400 per hour at 48 hours per week). Mr. Agran's time will be billed at a capped fixed rate of $18,000 ($375 per hour at 48 hours per week). Other personnel of MA&A, used as discussed above, will be billed as following: Consultants, $250-$325 per hour; Managing Directors, $325-$450 per hour; and Mr. Dan Dooley, principal, $495 per hour. MA&A also will be entitled to reimbursement of all reasonable out-of-pocket expenses. MA&A shall submit weekly invoices to the Debtors, which invoices shall be due upon presentment.

16. The Debtors propose that MA&A file with the Court a monthly statement of compensation received from the Debtors but not be required to apply to this Court for approval of amounts to be paid to MA&A.

17. In addition, as set forth in the Engagement Agreement, MA&A will receive a fee (the "**Success Fee**") equal to 3% of either or both of the following: (i) the cash sales price (including any holdbacks which are ultimately paid, but not including any assumed debt) of any

partial or global sale of the assets or stock of any of the Debtors and (ii) in connection with the confirmation of the Chapter 11 plan (the "**Plan**"), the value of all payments or distributions made or to be made to pre-petition debt or liabilities under, in connection with, or in contemplation of the Plan, including the reasonable value of any securities, interests, trust interests, or the like issued under the Plan, and including any payments reducing pre-petition debts (and any conversions of pre-petition debt to post-petition debt); provided, however, that any payment under either provision (i) or (ii) will be credited against any payment which would be due under the other provision, to avoid any double-counting for purposes of the Success Fee.

18.     As set forth in the Engagement Agreement, MA&A, Mr. Musso, Mr. Agran, and other MA&A personnel are entitled to be indemnified by the Debtors for and against any loss, cost or damage sustained or incurred by such indemnified parties on account of their respective actual or alleged acts or omissions as though they formally held the designated offices and/or positions with the Debtors to the full extent authorized by the Bylaws of the Debtors and applicable law (unless such indemnification is prohibited or adversely impacts coverage under any directors' and officers' or commercial liability insurance policies maintained by the Debtors). MA&A employees serving at the Debtors shall also be entitled to coverage under the Debtors' directors' and officers' insurance policy or policies.

## Disinterestedness

19.     MA&A has informed the Debtors that, except as set forth herein or in the Musso Retention Declaration, it (a) has no connection with the Debtors, its creditors, or other parties in interest in this case, (b) does not hold any interest adverse to the Debtors' estates, and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code under the standards established in this District.

7

20.     The Debtors do not owe MA&A any amount for services performed or expenses incurred prior to the Petition Date and thus MA&A is not a pre-petition creditor of the Debtors.

21.     MA&A has received a retainer of $50,000 in connection with preparing for the filing of this case. This retainer is a general retainer for post-petition services, will not be segregated by MA&A in a separate account, and will be held in MA&A's general operations account until the end of this case when it will be applied to MA&A's finally-approved fees in these proceedings.

## APPLICABLE AUTHORITY

22.     The Debtors seek the authority to retain and employ (a) MA&A to perform crisis management services, (b) Mr. Musso as CRO and Interim CEO, and (c) Mr. Agran as Asst. CRO, *nunc pro tunc* to the Petition Date, on the terms set forth herein and in the Engagement Agreement. Section 363(b) of the Bankruptcy Code provides in part that a debtor-in-possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."

23.     A debtor, pursuant to section 363(b) of the Bankruptcy Code, may employ one or more professionals to act as the debtor's restructuring officers or managers or crisis officers or managers. See Tokheim Corp., Ch. 11 Case No. 02-13437 (RJN) (Bankr. D. Del. February 25, 2003). The retention of interim corporate officers and other temporary employees is proper under section 363(b) of the Bankruptcy Code. Numerous courts in this district have authorized retention of officers utilizing this provision of the Bankruptcy Code. See, e.g., In re Sharper Image Corporation, Ch. 11 Case No. 08-10322 (KG) (Bankr. D. Del. Feb. 20, 2008); In re Adva-Lite, Inc., et al, Ch. 11 Case No. 07-10264 (KJC) (Bankr. D. Del. Mar. 16, 2007); Global Home Products LLC, et al., Ch. 11 Case No. 06-10340 (KG) (Bankr. D. Del. May 4, 2006); In re The

Holliston Mill, Inc., Case No. 07-10687 (MFW) (Bankr. D. Del. June 6, 2007); In re World Health Alternatives, Inc., et al., Ch. 11 Case No. 06-1066 (PJW) (Bankr. D. Del. Mar. 15, 2006); In re Sea Containers Ltd., et al., Ch. 11 Case No. 06-1156 (KJC) (Bankr. D. Del. May 8, 2007).

24.     The Debtors submit that the employment of MA&A, Mr. Musso, and Mr. Agran under the terms set forth herein and in the Engagement Agreement would greatly benefit the Debtors' estates and creditors. The absence of executives capable of managing the Debtors' restructuring efforts would severely hinder the Debtors' ability to accomplish the going-concern sale of the Debtors' business operations and to successfully conclude these Chapter 11 cases.

25.     Moreover, Mr. Musso, and Mr. Agran are amply qualified for the position for which they are being employed. The Debtors have determined that the terms of the Engagement Agreement are within the range of those for senior executive officers employed with companies of comparable size, value, and reputation. Accordingly, the Debtors' decision to enter into the Engagement Agreement reflects an exercise of the Debtors' sound business judgment.

## NOTICE

26.     No trustee or examiner has been appointed in these cases. Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' 40 largest unsecured creditors on a consolidated basis; (iii) counsel for Bank of America; (iv) all parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; and, (v) all parties who have filed a notice of appearance or otherwise requested notice in these chapter 11 proceedings in accordance with local rules and procedures or orders of this Court. Because of the exigencies of the circumstances and the irreparable harm to the Debtors that will ensue if the relief requested herein is not granted, the Debtors submit that no other notice need be given.

9

WHEREFORE, the Debtors respectfully request entry of the Order granting the relief requested herein and such further relief as is just.

Dated: January 29, 2010                                 Respectfully submitted,

By:  */s/ Michael W. Yurkewicz*
     Domenic E. Pacitti (Bar No. 3989)
     Michael Yurkewicz (Bar No. 4165)
     KLEHR HARRISON HARVEY BRANZBURG LLP
     919 North Market Street, Suite 1000
     Wilmington, Delaware 19801-3062
     Telephone: 302.426.1189
     Facsimile: 302.426.9193
     E-mail: dpacitti@klehr.com
     E-mail: myurkewicz@klehr.com

     *- and -*

     Robert A. Guy, Jr.
     J. Matthew Kroplin
     FROST BROWN TODD LLC
     424 Church Street, Suite 1600
     Nashville, Tennessee 37219
     Telephone: 615.251.5550
     Facsimile: 615.251.5551
     E-mail: bguy@fbtlaw.com
     E-mail: mkroplin@fbtlaw.com

     *- and -*

     Ronald E. Gold
     Beth A. Buchanan
     Lindsey F. Baker
     FROST BROWN TODD LLC
     2200 PNC Center
     201 East Fifth Street
     Cincinnati, Ohio 45202
     Telephone: 513.651.6800
     Facsimile: 513.651.6981
     E-mail: rgold@fbtlaw.com
     E-mail: bbuchanan@fbtlaw.com
     E-mail: lbaker@fbtlaw.com

     **PROPOSED CO-COUNSEL FOR DEBTORS AND DEBTORS-IN-POSSESSION**