# **EXHIBIT 1**

DEL1 73959-2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 10-10142 (KG) |
| SPECIALTY PACKAGING HOLDINGS, INC., *et al.*,[1] | ) ) ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Related to Docket No. 30 |

### NOTICE OF: (A) PUBLIC AUCTION TO SOLICIT BIDS FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF CERTAIN DEBTORS AND TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) PROCEDURES FOR SUBMISSION OF QUALIFYING BIDS; AND (C) SALE HEARING

**PLEASE TAKE NOTICE** that, upon the Motion of Debtors for Order: (A) Authorizing the Sale of Substantially All Assets of Certain Debtors Pursuant to 11 U.S.C. § 363, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365, (C) Establishing Auction Procedures For Sale and Assignment/Assumption, (D) Approving Bid Protections; (E) Setting Date of Auction and Date of Sale Hearing; and (F) Approving Form of Notice and Related Relief (the "**Sale Motion**")[2] filed by Specialty Packaging Holdings, Inc. ("**SPH**"), together with its direct and indirect debtor subsidiaries, The Specialty Packaging Group, Inc. ("**SPG**"), Cosmetics Specialties, Inc. ("**CSI**"), Cosmolab, Inc. ("**Cosmolab**"), Cosmetics Specialties East, LLC ("**CSE**"), and Cosmolab New York, Inc. ("**CNY**") (collectively, the "**Debtors**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases, a hearing (the "**Sale Hearing**" or the "**Sale Approval Hearing**") to approve the sale described below (the "**Sale**") has been scheduled before the Honorable _____, United States Bankruptcy Judge, on _____, 2010 at \_\_\_:\_\_\_ \_. m. **(Eastern Time)**, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801. The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing.

**PLEASE TAKE NOTICE** that, if no Auction (as such term is defined below) has taken place due to the absence of any other Qualified Bids (as such term is defined below), the Debtors at the Sale Hearing will seek approval of the Sale to the Buyer (as such term is defined below) on the terms and conditions described below.

**PLEASE TAKE FURTHER NOTICE** that, at the Sale Hearing, and if one or more Qualified Bids (as such term is defined below) have been received by the deadline set forth below, the Debtors will be requesting the Bankruptcy Court's approval of the results of the auction (the "**Auction**") that the Debtors will conduct at the offices of Klehr, Harrison, Harvey, Branzburg LLP, 919 N. Market St., Ste. 1000, Wilmington, Delaware 19801, or such other location as designated by the Debtors, at **10:00 a.m. (Eastern Time)** on _____, 2010 pursuant to the following terms and conditions:

**1. Asset Purchase Agreement.** CSI, Cosmolab and CNY (collectively, the "**Selling Debtors**") entered into an asset purchase agreement (the "**Purchase Agreement**") with All4 Cosmetics, Inc. (the "**Buyer**"). Pursuant to the terms of the Purchase Agreement, the Buyer proposes to purchase the Purchased Assets from the Selling Debtors, free and clear of all liens, claims and encumbrances. The Purchased Assets, as defined in the Purchase Agreement, include the executory contracts and unexpired leases, which the Selling Debtors seek to assume and assign to the Buyer (the "**Assumed Contracts**"). The Purchase Agreement is subject to higher or otherwise better offers and approval of the Bankruptcy Court.

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Specialty Packaging Holdings, Inc. (7942), The Specialty Packaging Group, Inc. (6668), Cosmetics Specialties, Inc. (0826), Cosmolab, Inc. (1367), Cosmetics Specialties East, LLC (0313), and Cosmolab New York, Inc. (2222). The primary mailing address for the Debtors is: 1100 Garrett Parkway, Lewisburg, TN 37091.

[2] Unless otherwise defined herein, capitalized terms used in this Notice shall have the meaning ascribed to them in the Bidding Procedures Order and/or the Purchase Agreement.

**2. Purchase Price.** The Purchase Price is (i) Thirteen Million Dollars ($13,000,000) in cash minus (ii) any Accounts Shortfall plus (iii) Buyer's obligations to pay up to One Million Dollars ($1,000,000) under Article III of the Purchase Agreement relating to certain payments to suppliers, plus (iv) any Assumed Liabilities.

**3. DISCLAIMER. Other potential bids are subject to the requirements, limitations and procedures (the "Bidding Procedures") set forth in the Bidding Procedures Order, a copy of which is available on www.kccllc.net/sph or may be obtained upon written request to Debtors' counsel. To the extent there are any inconsistencies between the Bidding Procedures Order and the summary description contained in this Notice, the Bidding Procedures Order shall control.**

**4. Confidentiality Agreement/Due Diligence.** Upon execution of a confidentiality agreement in form and substance reasonably satisfactory to the Debtors, any party that wishes to conduct due diligence on the Purchased Assets may be granted access to all material information that has been or will be provided to the Buyer or other bidders. Additionally, to the extent practicable, the Debtors will provide such parties with access to their management and to all other information reasonably requested.

**5. Qualified Bidders/Bid Deadline/Bid Requirements.** Any competing bid for the Purchased Assets must:

(A) be in writing;

(B) no later than 5:00 p.m. (Eastern Time) on the day that is three (3) business days prior to the Auction (such date or the date of the last extension as provided below, the "**Bid Deadline**"), deliver written copies of its bid so that they are received by the deadline, to: (a) Cosmolab, Inc., Attn: Michael J. Musso, 1100 Garrett Parkway, Lewisburg, Tennessee 37091, (404) 547-6023, facsimile (678) 538-6501, mmusso@morrisanderson.com; and (b) Frost Brown Todd LLC, Attn: Robert A. Guy, Jr., Esq., 424 Church Street, Suite 1600, Nashville, Tennessee 37219-2308; (615) 251-5557, facsimile (615) 251-5551, bguy@fbtlaw.com. The Debtors then will promptly distribute a copy of each bid received to the respective counsel for Bank of America and the any Official Committee of Unsecured Creditors that may be appointed in these cases (the "**Committee**"). By notice to all Qualified Bidders, the Debtors may extend the Bid Deadline once or successively, but they are not required to do so; provided, however, that the Debtors not extend such deadline beyond any deadline set forth in the Purchase Agreement without Buyer's written consent or further order of the Court;

(C) be **accompanied** by a clean duly executed asset purchase agreement (the "**Modified Purchase Agreement**") and a marked Modified Purchase Agreement reflecting the variations from the Purchase Agreement;

(D) be accompanied by a cash deposit (i.e., bank or certified check payable to Cosmolab, Inc.) equal to One Million Dollars ($1,000,000.00) (the "**Earnest Money Deposit**"), with such funds to be paid into an escrow agreement substantially similar to that executed by Buyer or to be paid into Debtor's counsel's escrow account;

(E) identify the assets that the bidder offers to purchase and the liabilities the bidder proposes to assume at the purchase price and upon the terms and conditions set forth in the Modified Purchase Agreement;

(F) not contain any due diligence or financing contingencies;

(G) demonstrate that the bidder is able to consummate the transaction (financially and otherwise) on the terms of the Modified Purchase Agreement;

(H) include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution and delivery of the Modified Purchase Agreement;

(I) identify with particularity each and every executory contract or unexpired lease, the assumption and assignment of which is a condition to closing; and,

(J) be for substantially all the Purchased Assets and contain a proposed cash purchase price at least in the amount of (i) the Purchase Price offered by the Buyer plus (ii) cash in the amount of the Break-Up Fee (hereafter defined) plus (iii) an additional cash overbid of at least $200,000 (the "**Minimum Overbid**").

A competing bid meeting the outlined requirements shall constitute a "**Qualified Bid**." Any person submitting a Qualified Bid shall be a "**Qualified Bidder**." The Debtors, in consultation with Bank of America and the Committee, shall have discretion to make any determination regarding whether a bid is a Qualified, and any non-qualifying bid may be modified to become a Qualifying Bid prior to the Auction in the event Debtors, in consultation with Bank of America and the Committee, determine to extend the deadline for submission for bids.

6. **Auction Participation/Bidding at the Auction.**

    (A) The Auction shall be conducted openly and all creditors of the Debtors' estates shall be permitted to attend.

    (B) Only the Buyer and the other Qualified Bidders shall be permitted to participate at the Auction.

    (C) All bidders shall appear at the Auction in person or through a duly authorized representative who shall appear in person.

    (D) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

    (E) The bidding at the Auction will be transcribed or videotaped.

    (F) The opening bid at the Auction shall not be less than the Qualified Bid designated by the Debtors as the then highest or best bid (the "**Opening Bid**").

    (G) After the Opening Bid, all subsequent bids at the Auction shall be in additional increments of at least $200,000. The Buyer shall be entitled to include as part of any subsequent bid a credit for the amount of the Break-Up Fee. For purposes of determining the net benefit to the estate of any bid made by the Buyer, the value attributable to any such bid shall be at least equal to the sum of (1) the dollar amount of the cash consideration contained in such bid, (2) the dollar value of any additional consideration contained in such bid, including any assumed liabilities, and (3) the dollar value of the Break-Up Fee.

    (H) The Buyer shall not be deemed to have waived its entitlement to receive the Break-Up Fee under the terms of the Purchase Agreement as a result of submitting a higher or otherwise better bid than its initial bid at the Auction.

    (I) The Buyer and the other Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Purchase Agreement or Modified Purchase Agreement, as applicable, at the Auction.

    (J) Bidding at the Auction shall continue until such time as the Debtors, in consultation with Bank of America and the Committee, determine in their business judgment the highest and best offer (the "**Successful Bid**" and the party that submitted such bid, the "**Successful Bidder**"). The Debtors shall seek approval from this Court of the Successful Bid at the Sale Hearing, subject to objections, if any, that may be raised in a timely manner by a party-in-interest. The Debtors' presentation to this Court for approval of any selected bid as the Successful Bid does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a Qualified Bid only when such Qualified Bid has been approved by this Court.

DEL1 73961-2

**7. Back-Up Bidder.** The final bid made by any Qualified Bidder (who is not the Successful Bidder) shall be binding on such Qualified Bidder until the earlier of (i) 24 hours after the Closing of the Sale transaction or (ii) 30 days after the Auction. Each such bid shall serve as a back-up bid (a "**Back-Up Bid**") and such Qualified Bidders as back-up bidders (each a "**Back-Up Bidder**"; collectively, the "**Back-Up Bidders**"), in order of highest value to lowest value, as determined by the Debtors in the exercise of their business judgment, in consultation with Bank of America and the Committee. If, following entry of the Sale Order, the Successful Bidder fails to consummate an approved Sale, the Back-Up Bidder with the highest and best back-up bid will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court; provided, however, that in the event that the Back-Up Bidder is the Buyer, then the Debtors will be obligated to consummate the sale as set forth in the Purchase Agreement. Should the Back-Up Bidder fail to close, the Debtors will be authorized, but not required, to consummate the sale to the next Back-Up Bidder without further order of the Court, and so on until the sale has closed or all Back-Up Bidders have failed to close; provided, however, that in the event that the Back-Up Bidder is the Buyer, then the Debtors will be obligated to consummate the sale as set forth in the Purchase Agreement.

**8. Earnest Money Deposit.**

(A) All Earnest Money Deposits shall be placed into an interest-bearing escrow account pursuant to documentation in form and substance reasonably acceptable to the Debtors in accordance with the terms of the escrow agreement to be provided with the Purchase Agreement, or will be placed in Debtors' counsel's escrow account, at the particular bidders' option.

(B) If the sale proposed by the Successful Bidder or any Back-Up Bidder (as applicable) closes, the Earnest Money Deposit of the Successful Bidder or the Back-Up Bidder (as applicable) shall be applied to the cash component of such bidder's purchase price.

(C) If the sale proposed by the Successful Bidder or the Back-Up Bidder (as applicable) does not close due to the breach by the Successful Bidder or any Back-Up Bidder (as applicable) of its Purchase Agreement, then the Earnest Money Deposit shall be paid to the Debtors. No such Earnest Money Deposit paid to Debtors shall be credited against the obligations of any Back-Up Bidder.

(D) All Earnest Money Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder by the earlier of (i) two (2) business days after the Closing of the Sale transaction or (ii) thirty-two (32) days after the Auction, unless such bidder is obligated to Close as a Back-Up Bidder. If the Successful Bidder's or any Back-Up Bidder's (as applicable) proposed sale does not close for any reason other than a breach by the Successful Bidder or such Back-Up Bidder (as applicable), then the Earnest Money Deposit shall be released to the Successful Bidder or the Back-Up Bidder (as applicable) within five (5) business days after termination of such party's Purchase Agreement, if earlier than the period set-out in the first sentence of this subsection.

**9. Modifications.** After consultation with Bank of America and the Committee, the Debtors may: (a) determine, in their business judgment, which bid or bids, if any, constitute the highest and best offer for the Purchased Assets; and (b) reject, at any time before entry of the Sale Order by this Court approving any bid as the Successful Bid, any bid that, in the Debtors' sole discretion, is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of the Sale set forth in the Purchase Agreement; or (iii) contrary to the best interests of the Debtors and their estates and creditors. The Debtors may extend or alter any requirement or deadline contained herein that the Debtors determine, in their business judgment, will better promote the goals of the Bidding Process; provided, however, that no extension or alteration shall be made to any such requirement or deadline that conflicts with the provisions set forth in the Purchase Agreement without the written consent of Buyer or further order of the Court.

**10. "As Is, Where Is" Sale Free and Clear of Liens and Claims.** The Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or their estates, except to the extent expressly set forth in the Purchase Agreement or any Modified Purchase Agreement, as the case may be. Buyer shall not be liable for any liabilities or Claims related to Debtors' pre-closing operations of any type or nature whatsoever, except for the Assumed Liabilities, to the maximum extent permitted by applicable law. Buyer is not intended to be and shall not be deemed to be a successor to any Debtor. Except as otherwise provided in the Purchase Agreement or any Modified Purchase Agreement, as the case may be, and to the maximum extent permitted by applicable law, all of the Debtors' right, title and interest in the Purchased Assets together with the Assumed Liabilities shall be sold free and clear of (a) all mortgages, deeds of trust, security interests, security agreements, conditional sale or other title retention agreements, pledges, liens, hypothecations, charges, obligations, judgments, orders or decrees of any court or government entity, rights of setoff of any

nature and kind whatsoever, recoupment, demands, encumbrances, easements, rights, encroachments, equities, imperfections of title, leases, licenses, shares, covenants, purchase or sale options, conditions, restrictions or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership including all "interests" in the Purchased Assets held by third parties within the meaning of section 363(f) of the Bankruptcy Code (the foregoing collectively referred to herein as "**Liens**") and (b)(i) all debts arising in any way in connection with any acts or omissions of any of the Debtors, (ii) any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code) against the Debtors or the Purchased Assets arising on or prior to the date of the Closing of the Sale under the Purchase Agreement or Modified Purchase Agreement, as the case may be, and (iii) any and all obligations, demands, liabilities, guaranties, options, rights, contractual commitments, restrictions, interests and matters of or against the Debtors or the Purchased Assets of any kind and nature (including without limitation, any options or rights to purchase such assets, any mechanics' and tax liens or claims, tort claims, employee wages or benefits, including but not limited to COBRA and health care rights, including the Debtors' claim experience, any fines, penalties or assessments imposed by any governmental entity, whether monetary or otherwise, any successor liability, products liability, environmental liability, tax or other liabilities against the Debtors, the Purchased Assets, or any other property of the Debtors), whether arising prior to or subsequent to the commencement of these cases, whether choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, matured or unmatured, liquidated or unliquidated, whether known or unknown and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, those of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code (the foregoing collectively referred to herein as "**Claims**"), except with respect to clauses (a) and (b) for the Assumed Liabilities and as expressly provided otherwise in the Purchase Agreement or Modified Purchase Agreement, as the case may be. Such Liens and Claims, if any, shall attach to the net proceeds of the Sale. The net proceeds from the Sale are expected to be paid to Bank of America for application against pre- and post-petition financing extended by Bank of America to the Debtors.

**11. Jurisdiction of Court.** Prospective purchasers are deemed to (i) have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters related to the Auction and the Sale and the terms and conditions of the transfer of the Purchased Assets and the Assumed Contracts, (ii) have consented to the sale at the time of the Approval Hearing, and (iii) to have waived any right to a jury trial in connection with any disputes relating to the Auction and the sale of the Assets.

**12. Assumption and Assignment of Executory Contracts and Unexpired Leases; Cure Amounts; Objections.**

(A) On or before _____, 2010, the Debtors shall serve a notice (the "**Assignment Schedule Notice**") on all counterparties to all executory contracts and leases to which the Selling Debtors are a party, which shall include (i) a schedule (the "**Assignment Schedule**") identifying all executory contracts and leases to which the Selling Debtors are a party and specifying the cure amounts (the "**Cure Amounts**") necessary to assume and assign such executory contracts and leases, and (ii) a written notification that such executory contracts and leases may be assumed and assigned by the Debtors and that failure to file a timely objection to such Assignment Schedule Notice shall constitute deemed consent to such assumption and assignment of such party's executory contract or lease, as may be selected and identified by the Buyer or other Successful Bidder. The Debtors and the Buyer, or such other Successful Bidder, reserve the right to add or delete contracts or leases from the Assignment Schedule up to the Closing Date. The assumption and assignment of any Assumed Contract shall not be binding on the Debtors or the Buyer or other Successful Bidder, and shall be subject to modification by the Debtors and the Buyer or other Successful Bidder until the Closing and the filing by Debtors of a Notice of Closing with the Court, with such Notice of Closing to be filed within two business days after completion of the Closing.

(B) Except as may otherwise be agreed to by the parties to an Assumed Contract, at or within 10 days after the Closing of the Sale, the Selling Debtors and/or the Buyer or other Successful Bidder shall cure those defaults under the Assumed Contracts that need to be cured in accordance with section 365(b) of the Bankruptcy Code, by payment of the Cure Amounts.

(C) **PLEASE TAKE FURTHER NOTICE THAT OBJECTIONS**, if any, to the proposed assumption and assignment of the Assumed Contracts, including, but not limited to, objections relating to adequate assurances of future performance or the Cure Amounts, must (a) be in writing and filed with this Court and served upon the following **on or before** _____, 2010: (i) Cosmolab, Inc., Attn: Michael J. Musso, 1100 Garrett Parkway, Lewisburg, Tennessee 37091; (ii) counsel for the Debtors, Frost Brown Todd LLC, Attn: Robert A. Guy, Jr., Esq., 424 Church Street, Suite 1600, Nashville, Tennessee 37219-2308; (iii) local counsel for the Debtors, Domenic E. Pacitti, Klehr Harrison Harvey Branzburg LLP, 919 N. Market St., Ste. 1000, Wilmington, Delaware 19801, (iv) counsel for Bank of America, Mayer Brown LLP, Attn: Thomas S. Kiriakos, Esq., 71 South Wacker Drive, Chicago, Illinois 60606-4637; (v) local counsel for Bank of America, Edwards Angell Palmer & Dodge LLP, Attn: Stuart M. Brown, 919 North Market Street, 15th Floor, Wilmington, Delaware 19801; (vi) counsel for the Buyer, Timothy T. Brock, Esq., Satterlee Stephens Burke & Burke, LLP, 230 Park Avenue, Suite 1130, New York, NY

-5-

10169; (v) counsel for the Committee; and, (vii) the Office of the United States Trustee for District of Delaware, Attn: Thomas Patrick Tinker, 844 King Street, Room 2313, Wilmington, DE 19801; and (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of this Court. Any counterparty to a contract or lease that is added to the Assignment Schedule shall have five (5) business from the date of service of the notice of any supplemental Assignment Schedule Notice to object to the proposed assumption and assignment such contract or lease. **Any party failing to timely file an objection to the Cure Amounts set forth on the Assignment Schedules or to the proposed assumption and assignment of the Assumed Contracts, shall be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts against the Debtors, their estates, and the Buyer or other Successful Bidder with respect to its executory contract(s) or unexpired lease(s) and will be deemed to consent to the proposed assumption and assignment of its executory contract(s) or unexpired lease(s).**

(D) Where a party to an Assumed Contract files a timely objection asserting a higher cure amount than the Cure Amount and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid under section 365 of the Bankruptcy Code with respect to such objection will be determined at the Sale Hearing or such other date and time as may be fixed by this Court, including such later date as may be set for Assumed Contracts which are added to the Assignment Schedule after the Sale Hearing but before the Closing. All other objections to the proposed assumption and assignment of the Assumed Contracts will be heard at the Sale Hearing, unless otherwise ordered by the Court.

**13. PLEASE TAKE FURTHER NOTICE THAT OBJECTIONS**, if any, to the relief requested in the Sale Motion must: (a) be in writing and filed with the Court; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; (c) set forth the names of the objecting party and the nature and the amount of any claim or interest alleged by such objecting party against the Debtors' estates or property; and (d) be served upon (such as to be <u>received</u> by) the following parties on or before **12:00 p.m. (Eastern Time)** _____, 2010: (i) Cosmolab, Inc., Attn: Michael J. Musso, 1100 Garrett Parkway, Lewisburg, Tennessee 37091; (ii) counsel for the Debtors, Frost Brown Todd LLC, Attn: Robert A. Guy, Jr., Esq., 424 Church Street, Suite 1600, Nashville, Tennessee 37219-2308; (iii) local counsel for the Debtors, Domenic E. Pacitti, Klehr Harrison Harvey Branzburg LLP, 919 N. Market St., Ste. 1000, Wilmington, Delaware 19801, (iv) counsel for Bank of America, Mayer Brown LLP, Attn: Thomas S. Kiriakos, Esq., 71 South Wacker Drive, Chicago, Illinois 60606-4637; (v) local counsel for Bank of America, Edwards Angell Palmer & Dodge LLP, Attn: Stuart M. Brown, 919 North Market Street, 15th Floor, Wilmington, Delaware 19801; (vi) counsel for the Buyer, Timothy T. Brock, Esq., Satterlee Stephens Burke & Burke, LLP, 230 Park Avenue, Suite 1130, New York, NY 10169; (v) counsel for the Committee; and, (vii) the Office of the United States Trustee for District of Delaware, Attn: Thomas Patrick Tinker, 844 King Street, Room 2313, Wilmington, DE 19801.

Dated: February ___, 2010                    Respectfully submitted,

By: /s/ Domenic E. Pacitti
    Domenic E. Pacitti (Bar No. 3989)
    Michael Yurkewicz (Bar No. 4165)
    KLEHR HARRISON HARVEY BRANZBURG LLP
    919 North Market Street, Suite 1000
    Wilmington, Delaware 19801-3062
    Telephone: 302.426.1189
    Facsimile: 302.426.9193
    E-mail: dpacitti@klehr.com
    E-mail: myurkewicz@klehr.com

    - and -

    Robert A. Guy, Jr.*
    J. Matthew Kroplin*
    FROST BROWN TODD LLC
    424 Church Street, Suite 1600
    Nashville, Tennessee 37219
    Telephone: 615.251.5550
    Facsimile: 615.251.5551
    E-mail: bguy@fbtlaw.com
    E-mail: mkroplin@fbtlaw.com

    - and -

    Ronald E. Gold*
    Beth A. Buchanan*
    Lindsey F. Baker*
    FROST BROWN TODD LLC
    2200 PNC Center
    201 East Fifth Street
    Cincinnati, Ohio 45202
    Telephone: 513.651.6800
    Facsimile: 513.651.6981
    E-mail: rgold@fbtlaw.com
    E-mail: bbuchanan@fbtlaw.com
    E-mail: lbaker@fbtlaw.com
    *Pro Hac Vice Motion Pending

    **PROPOSED CO-COUNSEL FOR DEBTORS
    AND DEBTORS-IN-POSSESSION**

DEL1 73961-2