IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 10-10142-KG |
| SPECIALTY PACKAGING HOLDINGS, INC., *et al.*,[1] | (Joint Administration Requested) |
| | Related to Docket No. 30 |
| Debtors. | |

## ORDER: (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL ASSETS OF CERTAIN DEBTORS PURSUANT TO 11 U.S.C. § 363(B), (F) AND (M); (B) AUTHORIZING THE ASSUMPTION AND ASSIGNEMNT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365; AND (C) AUTHORIZING THE CHANGE OF NAMES OF CERTAIN DEBTORS

THIS MATTER is before the Court on the Motion (the "**Motion**")[2] of Specialty Packaging Holdings, Inc. ("**SPH**"), together with its direct and indirect debtor subsidiaries, The Specialty Packaging Group, Inc. ("**SPG**"), Cosmetics Specialties, Inc. ("**CSI**"), Cosmolab, Inc. ("**Cosmolab**"), Cosmetics Specialties East, LLC ("**CSE**"), and Cosmolab New York, Inc. ("**CNY**") (collectively, the "**Debtors**"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases, for entry an order (the "**Sale Order**"), pursuant to 11 U.S.C. §§ 105(a), 362, 363(b), (f) and (m), 364(c)(1), 365, 1107 and 1108 (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") granting the Debtors authority to sell substantially all assets (as defined in

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Specialty Packaging Holdings, Inc. (7942), The Specialty Packaging Group, Inc. (6668), Cosmetics Specialties, Inc. (0826), Cosmolab, Inc. (1367), Cosmetics Specialties East, LLC (0313), and Cosmolab New York, Inc. (2222). The primary mailing address for the Debtors is: 1100 Garrett Parkway, Lewisburg, TN 37091

[2] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Motion or the Purchase Agreement.

1

the Purchase Agreement, the "**Purchased Assets**") of CSI, Cosmolab and CNY (collectively, the "**Selling Debtors**"), free and clear of liens, claims, interests and encumbrances, and to assume and assign certain of the Selling Debtors' executory contracts and unexpired leases (the "**Sale**") and to change the names of Cosmolab and CNY; the Motion having been served upon (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' 40 largest unsecured creditors on a consolidated basis; (iii) counsel for Bank of America; (iv) all parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (v) counsel for All4 Cosmetics, Inc. (the "Buyer"); (vi) the counterparty to each executory contract and unexpired lease of the Selling Debtors; (vii) all taxing authorities having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (viii) all potential buyers known by the Debtors; and, (ix) the Attorneys General in the States where the Purchased Assets are located; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is required; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the asset purchase agreement between the Selling Debtors and the Buyer entered into on or about January 15, 2010 (the "**Purchase Agreement**").

C.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. (iii). This proceeding is a "core proceeding" within the meaning of 28 U.S.C. §157(b)(2)(A), (N) and (O).

D.  Proper, timely, adequate and sufficient notice of, and opportunity to object to, the Motion and the Sale Hearing has been provided to all parties entitled thereto in accordance with the various provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules of this Court, and all requirements of procedural due process and all aspects of the Sale have been adequately disclosed.

E.  The provisions of Section 363(f) of the Bankruptcy Code have been satisfied, including, without limitation, consent of any lenders pursuant to Section 363(f)(2).

F.  The Sale of the Assets to Buyer in accordance with the Purchase Agreement is an appropriate exercise of the Debtors' business judgment and is in the best interests of the Debtors and their estates.

G.  The Bidding Procedures approved by the Court, and complied with by the Debtor, pursuant to *The Order: (A) Approving Auction Procedures To Sell Substantially All Assets Of Certain Debtors And To Assume And Assign Certain Executory Contracts And Unexpired Leases; (B) Approving Bid Protections; (C) Setting Date Of Auction; (D) Setting Sale Hearing; And (E) Approving Form Of Notice*, entered on February 9, 2010 (the "**Bidding Procedures Order**"), in conjunction with service of the Sale Notice, provided potential interested purchasers with sufficient notice of the opportunity to overbid and the procedures for overbidding, on the Assets. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, and the right of third parties to submit higher or otherwise better offers for all or any portion of the Purchased Assets in accordance with the Bidding Procedures approved by this Court, has been afforded to all interested persons and entities.

H.  The successful bidder for the Sale of the Purchased Assets, as selected in accordance with the Bidding Procedures, is the Buyer pursuant to the Purchase Agreement. The

offer of the Buyer to purchase the Purchased Assets for the Purchase Price, as described in the terms and conditions of the Purchase Agreement, is fair and reasonable under the circumstances and constitutes full, fair, and adequate consideration and reasonably equivalent value for the Assets.

I. Although two additional qualified bidders appeared at the Auction and there were 18 competing bids, the Buyer's final offer was higher and better than any of such offers.

J. The Purchase Agreement was entered into in good faith, neither fraudulently nor by any means forbidden by law, and was based upon arm's length bargaining and without collusion. Neither the Debtors nor the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of section 363(n) of the Bankruptcy Code. The Buyer is a good faith purchaser as that term is used in Section 363(m) of the Bankruptcy Code, is not affiliated with the Debtors and is not an insider of any of the Debtors.

K. The Debtors have full power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and no further authority is necessary to complete the Sale, to consummate the transactions contemplated by the Purchase Agreement, and to transfer title of the Purchased Assets to Buyer.

L. Buyer is not a successor to the Debtors and shall not be treated as any Debtor's successor.

M. There are no common incorporators, officers, directors, or material stockholders between Debtors and Buyer.

N. In connection with the Auction, the marketing of the Purchased Assets, and the prosecution of this Motion, the Debtors (and Buyer to the extent applicable) have complied with the terms of the Sale Notice and the Bidding Procedures Order.

O. The Motion should be approved as it is in the best interests of creditors and is in the best interests of the Debtors' estates, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

P. The Court further incorporates its findings of fact and conclusions of law from the Bidding Procedures Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. Subject to the terms of this Order, the Motion is GRANTED.

2. All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, and all reservations of rights included therein, are, except as provided in other orders of the Court, hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

3. The Purchase Agreement, in substantially the form attached to the Motion as Exhibit "A" and the transactions contemplated thereby are approved.

4. The Debtors and the Buyer are authorized and empowered to enter into, and to perform all of their obligations under, the Purchase Agreement and take any acts, and to execute and perform such agreements or documents, including any ancillary agreements, and take such other actions as are necessary, desirable or reasonably required to effectuate the terms of the Purchase Agreement, including, without limitation, destruction of useless inventory as required by the Purchase Agreement, payment of up to $15,000 to or for the benefit of the Cosmolab Europe, A.G., up to $3,000 to or for the benefit of Cosmolab Asia, Ltd., and up to $6,000 to or for the benefit of Cosmolab (Souzhou) Cosmetics Co. Ltd. and/or Cosmolab (Far East) Limited, so that each can comply with their obligations under the ancillary agreements to the Purchase Agreement (cumulatively, $24,000, which may be allocated by the Debtors as needed between the foregoing entities to enable compliance by the entities with the ancillary agreement obligations)(it being understood that the foregoing payments to the overseas affiliates will not in any way be deemed to release or waive any intercompany or other claims of the estates against such entities).

5. The Purchased Assets are sold to Buyer "as is-where is" and without warranty of any kind, other than the representations and warranties set forth in the Purchase Agreement.

6. Pursuant to Section 363(f) of the Bankruptcy Code, title to the Purchased Assets shall be transferred to Buyer free and clear of any and all liens, claims, interests, encumbrances, and successor liabilities to the maximum extent permitted by law (collectively, as defined in the Purchase Agreement and including any successor liabilities, "**Claims and Encumbrances**"), with all such liens, claims, interests, and encumbrances to attach to the proceeds that the Selling Debtors receive under the Purchase Agreement (the "**Sale Proceeds**") in the order of their priority, and with the same validity, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses that the Debtors may possess with respect thereto, and, specifically, the net Sale Proceeds shall be paid to Bank of America, N.A. ("**BANA**") at the time of the consummation of the Sale for application against any obligations arising under any debtor-in-possession financing facility and, to the extent applicable, for provisional payment of pre-petition obligations owing to BANA, but subject in all respects to the scope of any "carve-out" set forth in any pertinent order approving any such debtor-in-possession financing. To the maximum extent permitted by law, Buyer shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Purchased Assets other than as expressly set forth in this Order and in the Purchase Agreement.

7. On the Closing Date (as that term is defined in the Purchase Agreement), each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release any Encumbrances against the Assets, as such Encumbrances may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing Encumbrances on the Purchased Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens or other interests which the person or entity has with respect to the Purchased Assets, the Debtors or the Buyer, as the case may be, is hereby authorized and

directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity immediately prior to the Closing.

8. This Order shall be binding upon and govern the acts of all persons and entities, including without limitation, all creditors and stakeholders, any parties in interest, the Debtors and Buyer, and their respective successors and assigns, any chapter 11 trustee hereinafter appointed for the Debtor's estate or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, filing agents, recording agencies, secretaries of state and all other persons and entities who may be required by operation of law to accept, file, register or otherwise record or release any documents or instruments. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

9. Subject to the satisfaction of all conditions and the completion of all deliveries required under the Purchase Agreement, effective as of the Closing Date, the Sale shall constitute a legal, valid and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person and shall vest the Buyer with all right, title and interest of the Debtors in and to the Purchased Assets, free and clear of all Claims and Encumbrances. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets and a bill of sale transferring good and marketable title in the Purchased Assets to Buyer free and clear of all Claims and Encumbrances.

10. All persons or entities, presently or on or after the Closing, in possession of some or all of the Assets are directed to surrender possession of the Purchased Assets to the Buyer on such Closing or at such time thereafter as the Buyer may request.

11. The Purchase Price of the Purchased Assets shall be satisfied in full pursuant to the terms of the Purchase Agreement, and shall not be subject to setoff or any other reduction on

the basis of any prepetition or postpetition claim that Buyer may assert against the Debtors. There are no brokers involved in consummating the Sale and no brokers' commissions are due.

12. Neither Buyer nor its affiliates, successors or assigns shall be deemed, as a result of any action taken in connection with the Sale or post-Closing operation of the Business and use of the Purchased Assets to: (i) be a successor to the Debtors; (ii) have, de facto or otherwise, merged with or consolidated into the Debtors; (iii) be a mere continuation or substantial continuation of the Debtors or any enterprise of the Debtors; (iv) be acquiring or assuming or liable for any liability, warranty or other obligation of the Debtors.

13. Title to the Purchased Assets shall vest in Buyer free and clear of all Claims and Encumbrances of any type or nature including any Claims against Debtors and all Encumbrances on the Purchased Assets for, and Buyer shall not be liable for, any and all liabilities or Claims related to Debtors' pre-closing operations of any type or nature whatsoever, except for the Assumed Liabilities, to the maximum extent permitted by applicable law. Buyer shall not be liable for any liabilities of the Debtors, other than the Assumed Liabilities. Further, Buyer shall have no liability for any taxes or similar charges accruing, assessed, or attributable to a period prior to the Closing Date, all of which shall be the responsibility of the Debtors.

14. As negotiated in satisfaction of a potential objection by the United States Environmental Protection Agency, nothing in this Order or the Asset Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit charged with administering or enforcing any environmental protection police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.

15. Buyer is acting in "good faith" and shall be entitled to the protection of section 363(m) of the Bankruptcy Code as to all aspects of the transaction pursuant to the Purchase Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

16. All persons or entities holding any Claim against any Debtor or any Encumbrance on the Purchased Assets are enjoined, pursuant to section 105 of the Bankruptcy Code, from

enforcing any such Claim against Buyer (or any of Buyer's affiliates, successors or assigns) or any such Encumbrance against the Purchased Assets after the Closing.

17. The Sale approved by this Order is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

18. The terms of the Purchase Agreement and any ancillary agreements may be waived, modified, amended, or supplemented by the written and signed agreement of the Debtors and the Buyer without further action of the Court; *provided, however*, that any such waiver, modification, amendment, or supplement is not material or is not adverse to the Debtors' estates.

19. All bidders submitting Back-up Bids shall continue to be bound as Back-Up Bidders pursuant to the terms of the Sale Notice and the terms of the Bidding Procedures Order entered by the Court.

20. The Debtors may assume the Assumed Contracts and assign each of them to the Buyer pursuant to section 365 of the Bankruptcy Code free and clear of all Claims and Encumbrances. The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors and the Debtors' estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

21. The Cure Amounts, as determined by the Court at the Sale Hearing, or absent an objection as set out on the most recent Assignment Schedule, are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Contracts (the "Cure Amounts"). The Buyer has provided adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code. All conditions for the assumption of the Assumed Contracts under section 365 of the Bankruptcy Code have been or will be satisfied prior to or at the Closing of the transactions contemplated by the Purchase Agreement.

22. After the payment of the relevant Cure Amounts, neither the Debtors nor the Buyers shall have any further liabilities to the non-Debtor parties to the Assumed Contracts other than the Buyer's obligations under the Assumed Contracts that become due and payable on or after the Closing and are based on obligations related to the period from the Closing forward. Upon assignment of the Assumed Contracts, Debtors will have no further or future liability thereunder.

23. The Debtors and the Buyer reserve the right to add or delete contracts or leases from the list of Assumed Contracts up to the Closing Date. The assumption and assignment of any Assumed Contract shall not be binding on the Debtors or the Buyer until the Debtors file a Notice of Closing, which shall be filed within two business days after completion of the Closing and shall be served on all counter-parties to the Assumed Contracts. In the event of any additions of proposed Assumed Contracts to the Assignment Schedule, any objections to assumption and assignment or to the proposed cure amount shall be filed within five (5) days of service of the revised Assignment Schedule and/or Notice of Closing, as provided in the Sale Notice. Any objections which are unresolved will be heard by the Court at a hearing to be set at a later date. In connection with Closing, Buyer agrees that whether it assumes, or determines to have Debtor reject, that certain Patent License between Cosmetic Specialties, Inc. and Schwan-STABILO Cosmetics GmbH & Co ("Schwan") dated as of October 20, 2002 (including any amendments, the "Patent License"), Buyer and Schwan shall have no claims against Debtors with regard to the Patent License.

24. The Limited Power of Attorney and Interim Management Agreement, if any, shall remain in place and shall not be subject to rejection in the event of a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases until Buyer has obtained all Governmental Authorizations required to operate the Business.

25. The failure specifically to include any particular provisions of the Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement is approved in its

entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to the Closing.

26. This Court retains exclusive jurisdiction to enforce the provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, to resolve any dispute concerning this Order, the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Purchase Agreement, any related agreements and this Order.

27. The provisions of this Order are nonseverable and mutually dependent. The protections given to the Buyer in this Order shall be read and interpreted in the broadest way possible to provide the maximum protections to the Purchaser. Further, any actions taken pursuant thereto shall survive entry of any order which may be entered confirming any plan of reorganization for the Debtors, converting the Debtors' cases from chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, or dismissing the Debtors' cases. Nothing in any chapter 11 plan filed in this case shall modify in any way, without the express written consent of Buyer, any of the terms of this Order.

28. Notwithstanding Bankruptcy Rules 6004(h), 6006(d) and 7062 (to the extent the foregoing are applicable) or any other applicable rule, this Order is effective and enforceable immediately upon entry, no stay applies, and the Debtor may complete the Sale forthwith.

29. To the extent any provisions of this Order conflict with the terms and conditions set forth in the Motion, this Order shall govern and control.

30. Pursuant to, and to the extent necessary under, Bankruptcy Rules 5003, 6004(h), 6006(d), 7062, 9014, 9021 and 9022, this Court hereby expressly finds and concludes that there is no just cause for delay in the implementation of this Sale Order. This Sale Order therefore shall not be stayed for fourteen days after its entry. Notwithstanding any provision of the Bankruptcy Code or Bankruptcy Rules to the contrary, this Sale Order shall be effective and

enforceable immediately upon entry, and any stay thereof, including without limitation pursuant to Rule 6004(h), Rule 6006(d), and Rule 7062, is hereby abrogated.

Dated: March 24, 2010
Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE